[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 72.]

THE STATE OF OHIO, APPELLEE, *v*. PHILLIPS, APPELLANT.

[Cite as *State v. Phillips*, 1995-Ohio-171.]

*Criminal law—Aggravated murder—Death penalty upheld, when—Arraignment of an accused via closed-circuit television is constitutionally adequate, when—Supreme Court's independent review will rectify any claimed appellate error in a capital case where court of appeals fails to individually identify or discuss any evidence offered in mitigation but simply concludes that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.*

Arraignment of an accused via closed-circuit television is constitutionally adequate when the procedure is functionally equivalent to live, in-person arraignment.

(No. 94-2208—Submitted July 12, 1995—Decided November 22, 1995.)

APPEAL from the Court of Appeals for Summit County, No. 16487.

———————————

{¶ 1} On January 18, 1993, Sheila Marie Evans, age three, died as a result of cardiovascular collapse due to, *inter alia*, severe, blunt force trauma to her abdomen. At the time, Sheila's mother, Fae Evans, was dating and occasionally cohabiting with appellant, Ronald Ray Phillips. In addition to Sheila, Evans had two other children, Sara, twenty-nine months old, and Ronald, Jr., appellant's infant son.

{¶ 2} Shortly after 10:00 a.m. on the morning of January 18, 1993, Fae Evans took Ronald, Jr. to see the family physician for a routine physical examination. Appellant remained at Evans's apartment to care for Sheila and Sara. Evans returned to the apartment at approximately 11:25 a.m. and found appellant sitting in the kitchen. Soon thereafter, Evans called out to her daughters, but they

failed either to respond or to appear. Appellant walked into the girls' bedroom and found Sheila lying on her bed motionless, pale and cold. He then lifted Sheila and carried her downstairs to his grandmother's apartment. Hazel Phillips, appellant's grandmother, telephoned the 911 emergency operator, reported that Sheila was not breathing, and relayed instructions on performing cardiopulmonary resuscitation to appellant. Appellant in turn attempted to revive Sheila until medical assistance arrived.

{¶ 3} Paramedics from the city of Akron responded to the 911 call within four minutes of being dispatched and immediately transported Sheila to Children's Hospital in Akron. Upon her arrival at the emergency room, Sheila was not breathing and had no pulse. The first physician to examine Sheila, Dr. Eugene Izsak, noted that she had multiple bruises on her torso, a distended stomach, apparent internal abdominal injuries, and a stretched anus with some acute, recent changes. Dr. Izsak's medical team continued cardiopulmonary resuscitation and was eventually able to obtain a pulse. Sheila was transported to the operating room after spending approximately one hour in the emergency room. Dr. Robert Klein performed emergency abdominal surgery, which revealed that Sheila's abdominal cavity was filled with a significant amount of free air and blood, and that a portion of her intestine, the duodenum, was perforated and gangrenous. Dr. Klein removed the dead portion of the intestine, and attempted to control the internal bleeding. Based upon his observations, Dr. Klein determined that the injury to the duodenum had been inflicted at least two days prior to Sheila's admission into the hospital. Despite the significant medical efforts performed at Children's Hospital, Sheila died later that day.

{¶ 4} On January 19, 1993, Dr. William Cox, the Summit County Coroner, conducted an autopsy on Sheila. During his external examination of Sheila, Dr. Cox documented more than one hundred twenty-five bruises, many of which he identified as acute injures that had been inflicted within a few hours of death. The

2

bruising indicated that Sheila had been severely beaten about her head, face, upper and lower torso, arms, legs, and genitalia. He also detailed that the blows to Sheila's abdomen had resulted in severe internal trauma, including hemorrhaging in her stomach, intestine and other internal organs. Dr. Cox examined the section of Sheila's bowel that had been surgically removed, and determined that the injury to the duodenum had occurred approximately forty-eight hours prior to her death. During that forty-eight-hour period, Dr. Cox opined, Sheila would have suffered from intense abdominal pain, an inability to eat, vomiting, a high temperature, and listlessness. The beating Sheila suffered on the morning of January 18, 1993 caused the already necrotic and gangrenous duodenum to rupture. Dr. Cox concluded that Sheila died as a result of cardiovascular collapse stemming from the severe, blunt force trauma to her abdomen, and the numerous related complications.

{¶ 5} Dr. Cox also discovered during the autopsy evidence of acute anal penetration. Based upon the presence of contusions and lacerations, Dr. Cox determined that Sheila had sustained repetitive anal penetrations over a period of time, and that the most recent anal trauma had occurred sometime during the morning of January 18, 1993. Given the absence of abrasions within the rectum, Dr. Cox further concluded that Sheila had been anally penetrated by a penis rather than by a finger or some other foreign object.

{¶ 6} At approximately 3:00 p.m. on the day Sheila died, Detective Jan Falcone, an officer with the Juvenile Bureau of the Akron Police Department, interviewed appellant at the police station. Although appellant was not placed under arrest, Falcone read appellant his *Miranda* rights, which he waived. During the interview, appellant admitted that on Friday, January 15, 1993, or Saturday, January 16, 1993, he had spanked Sheila three times with an open hand. After the spanking, appellant noticed bruises on the girl's bottom, which surprised him. He said, "I really didn't think I spanked her that hard but I told Fae I would not do it

any more." Appellant indicated that Sheila had not felt well during the weekend, and that she had vomited several times.

{¶ 7} Appellant also told Falcone that Sheila had been injured on several previous occasions. He recalled one incident in which Sheila fell on a railroad spike which penetrated either her vagina or anus. On another occasion, appellant claimed that Sheila hurt her "vagina and stomach area" when she jumped from a dresser to a bed and struck the corner of the bed. Sheila bruised her eye and cut her lip when she fell down a flight of stairs. Appellant denied having ever touched Sheila or Sara in their "private areas."

{¶ 8} At some point during the interview, appellant was informed that Sheila had died. Falcone then asked appellant again what had happened to Sheila. Appellant responded that the night before Sheila's death, he had observed Evans in the girls' bedroom standing over Sheila with both fists clenched after hearing Sheila scream, "Don't beat me." The interview ceased after that exchange, and appellant left the police station. In total, the interview lasted approximately seven hours, during which time appellant was provided with food, beverages, and several breaks.

{¶ 9} On Wednesday, January 19, 1993, appellant telephoned the Akron police station in order to speak with the detectives who were investigating Sheila's death. Detective Ronald Perella, a detective assigned to the case, was attending Sheila's autopsy at the time appellant's call was received and thus was unable to immediately speak with appellant. The next morning, Perella and his supervisor, Sergeant Dye, drove to South Alternative School, where appellant was enrolled as a student. The officers met with appellant and asked him to return to the police department for further questioning. Appellant complied, was driven to the Juvenile Bureau of the police department, and taken to an interviewing room. Perella read appellant his *Miranda* rights, which he again waived, and asked appellant to share whatever additional information he wished to convey. Appellant then repeated the same information he had given to Detective Falcone on the previous day. The

4

detectives questioned appellant as to why he had telephoned them if he simply wanted to reiterate his earlier statement. They also informed appellant that the coroner had performed an autopsy on Sheila, and therefore knew everything that had happened to her.

{¶ 10} At that point, appellant asked Sergeant Dye to leave the room so that he could speak with Detective Perella alone. Dye agreed. Once they were alone, appellant told Perella, "I don't want to go to jail, I don't want to get pumped in the butt." Perella responded that "not everybody who gets arrested goes to jail, that there could be counseling but without knowing what [appellant] wanted to talk about, that [Perella] couldn't promise him anything except to tell the prosecutor and the judge that he cooperated." Appellant then confessed that on the morning of January 18, 1993, he "lost it" and repeatedly hit Sheila. Appellant explained that he had called Sheila three times for breakfast and she had failed to respond. As a result, appellant went to the girls' bedroom, pulled the covers off Sheila, and began hitting her, throwing her against the walls, and dragging her by her hair. During the beating, appellant noticed that Sheila was not wearing underwear, which caused him to become sexually aroused. After beating Sheila, appellant stated he put Vaseline on her anus and inserted his fingers. While appellant admitted that he thought about anally penetrating the three-year-old girl with his penis on that morning, he denied doing so. Appellant did confess to anally penetrating Sheila with his penis on two prior occasions, but claimed that Evans had paid him to perform those acts. Toward the end of the approximately three-hour interview, appellant prepared a handwritten statement detailing the events to which he had verbally confessed. Shortly after he completed the written statement, appellant was arrested.

{¶ 11} On February 1, 1993, the Summit County Grand Jury returned an indictment against appellant for one count of aggravated murder in violation of R.C. 2903.01(B) with a death specification pursuant to R.C. 2929.04(A)(7), one count

of felonious sexual penetration pursuant to R.C. 2907.12(A)(1)(b), three counts of rape pursuant to R.C. 2907.02 (A)(1)(b), one count of felonious assault in violation of R.C. 2903.11(A)(1), and one count of endangering children pursuant to R.C. 2919.22(B) with a physical harm specification pursuant to R.C. 2941.143(A).[1] Appellant entered a plea of not guilty to each count. Prior to trial, the state dismissed the felonious assault and child endangering charges. On August 18, 1993, a jury found appellant guilty on each of the remaining charges. Following a mitigation hearing, the jury recommended that appellant be sentenced to death for his conviction of aggravated murder. The trial court agreed with the jury's recommendation and sentenced appellant to death. Additionally, the trial court imposed life sentences for each of the three rape charges and the charge of felonious sexual penetration.

{¶ 12} The court of appeals affirmed appellant's convictions and sentences, and the cause is now before this court upon an appeal as of right.

————————————

*Maureen O'Connor*, Summit County Prosecuting Attorney, and *Philip D. Bogdanoff*, Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker*, Ohio Public Defender, *Joann Jolstad*, Chief Appellate Counsel, *Kevin L. Fahey*, *Joseph E. Wilhelm* and *J. Joseph Bodine, Jr.,* Assistant Public Defenders, for appellant.

————————————

---

1. Fae Amanda Evans was also charged in connection with Sheila's abuse and death. A jury convicted Evans of child endangering in violation of R.C. 2919.22(A) with a physical harm specification pursuant to R.C. 2941.143, and involuntary manslaughter pursuant to R.C. 2903.04(A). Evans was sentenced to thirteen to thirty years' imprisonment. The convictions and sentence were affirmed in *State v. Evans* (1994), 93 Ohio App.3d 121, 637 N.E.2d 969.

**ALICE ROBIE RESNICK, J.**

{¶ 13} Appellant has raised thirty propositions of law for our consideration. We have thoroughly reviewed each and, for the reasons which follow, find that none warrants a reversal of appellant's convictions. In addition, we have independently reviewed the record, weighed the aggravating circumstance against the mitigating factors, and examined the proportionality of the death sentence in this case to the penalty imposed in similar cases. Upon a complete review of the record, we affirm appellant's convictions and sentences.

I

*Evidentiary Issues*

A

{¶ 14} In his first proposition of law, appellant raises several challenges to the admission of sixty-two photographs into evidence. First, appellant argues that the trial court applied an incorrect standard of review in determining whether the offered photographs were admissible. Evid. R. 403 provides:

"(A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice ***.

"(B) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

{¶ 15} Appellant correctly points out that the standard of review for admission of photographic evidence in capital cases is more stringent than that prescribed by Evid. R. 403. In *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph seven of the syllabus, this court held that "[p]roperly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as

the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number." The conclusion reached in *Maurer* represents an application of Evid.R. 403 which recognizes that gruesome photographs depicting a victim are "charged with such immediacy and emotional impact that the risk of prejudice is enhanced proportionately, a risk that we are less willing to tolerate in a case where the defendant faces a penalty of death." *State v. Benner* (1988), 40 Ohio St.3d 301, 311, 533 N.E.2d 701, 711, fn. 2.

{¶ 16} It is well settled, however, that the determination of whether photographs meet the test for admissibility rests within the sound discretion of the trial court. *State v. Slagle* (1992), 65 Ohio St.3d 597, 601, 605 N.E.2d 916, 923; *Maurer*, *supra*, 15 Ohio St.3d at 264, 15 OBR at 401, 473 N.E.2d at 791. This court will not interfere with a trial court's balancing of probative value and prejudice "'unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby ***.'" *Slagle*, *supra*, 65 Ohio St.3d at 602, 605 N.E.2d at 923, quoting *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130. Appellant contends that the trial judge abused his discretion in this case by failing to perform the required balancing of probative value and prejudice.

{¶ 17} The same photographs that were introduced in this case had also been introduced during the trial of Sheila's mother, Fae Evans. Appellant asserts that the trial judge in this action, who also presided over Evans's trial, admitted the photographs in the instant case simply because he had admitted them in Evans's. Appellant specifically points to a portion of the transcript which reveals that in discussing the admissibility of the photographs in this case, the trial judge seemed to rely on his previous ruling in Evans's case to support his ruling in appellant's case. While this comment standing alone appears to support appellant's position, it does not do so when viewed in context. Upon a thorough review of the complete

record, we are satisfied that the trial court performed the necessary review prior to deeming the photographs admissible.

{¶ 18} Appellant also challenges the admission of the slides into evidence on the basis that they were hideous visual aids which converted "scientific analysis into a horror story." The photographs simply depicted the actual condition of three-year-old Sheila as she appeared in the hospital. As such, they provided the most accurate account of Sheila's extensive injuries.

{¶ 19} During his videotaped deposition, Dr. Klein testified concerning the events that occurred when Sheila was first admitted to Children's Hospital. To facilitate the presentation of his testimony, Dr. Klein referred to eleven color slides that had been taken at the hospital. He used the slides to describe Sheila's injuries, to explain the type of medical procedures that were used in the emergency room, and to support his expert conclusion that Sheila had been anally penetrated by a penis. The probative value of these photographs far outweighed any prejudicial impact they may have had on the jury. Further, they were neither repetitive nor cumulative, and thus were properly admitted.

{¶ 20} With respect to Dr. Cox's testimony, appellant attacks the state's introduction of photographs during the coroner's testimony, even though he had already illustrated his testimony with diagrams. While describing Sheila's injuries, Dr. Cox initially referred to drawings that he had prepared, which indicated the location and the number of bruises found on Sheila's body. Given that there were more than one hundred twenty-five such bruises and that many of them overlapped one another, Dr. Cox necessarily used several such diagrams to fully portray the extent of the girl's external injuries. Thereafter, the state introduced fifty-one color slides to further illustrate Dr. Cox's testimony. In relation to Sheila's external injuries, the photographs accomplished what the diagrams could not: they accurately depicted the color of each bruise, which was essential to identify the age of the bruises. The photographs of Sheila's internal injuries directly related to Dr.

Cox's expert conclusions concerning the cause of death.  Additionally, the pictures of Sheila's anal injuries supported Dr. Cox's determination that the child had been repeatedly penetrated, most recently within a few hours of her death.  Therefore, we find that these pictures were neither cumulative nor repetitive, and that their probative value far outweighed any possible prejudice to the defendant.

{¶ 21} Among the fifty-one slides used by Dr. Cox, appellant specifically takes issue with the admission of three autopsy photos which provided different views of Sheila's skull.  Appellant asserts that these slides were not relevant because "no evidence was introduced which tied any head injury to the cause of death ***."  This statement is incorrect.  The challenged photos accompanied Dr. Cox's testimony concerning the presence of brain hemorrhaging and swelling, each of which contributed to Sheila's death.  Thus, these three pictures carried significant probative value warranting admission into evidence.

{¶ 22} Finally, appellant argues that the use of three specific slides during both Dr. Klein's and Dr. Izsak's testimony rendered them cumulative and thus inadmissible.  Simply using a select number of the same exhibits during the testimony of two different witnesses does not transform them into inadmissible cumulative evidence.  Each physician in this case provided independent and different testimony, which happened to be aided by some of the same photographs.

{¶ 23} Upon thorough review of the sixty-two photographs and the relevant testimony which accompanied the introduction of each, we find that the trial judge acted well within the bounds of his discretion in admitting the photos.  The pictures appropriately portrayed the actual condition of Sheila at the time that she was admitted to the hospital and following her death with respect to the massive external and internal injuries she sustained.  None of the slides was repetitive.  The probative value of each photo clearly outweighed any potential prejudice to the defendant.  Appellant's first proposition of law is, therefore, overruled.

B

**{¶ 24}** In his second proposition of law, appellant claims that the state was collaterally estopped from proving that appellant killed Sheila on January 18, 1993, because the state had previously proved during Fae Evans's trial that Sheila's death was caused on January 16, 1993. The United States Supreme Court in *Ashe v. Swenson* (1970), 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475, stated that collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." The *Ashe* court further concluded that the Double Jeopardy Clause incorporates the doctrine of collateral estoppel in criminal proceedings. *Id.* at 445, 90 S.Ct. at 1195, 25 L.Ed.2d at 476. Appellant contends that in the instant criminal action the state cannot make any factual claims which are inconsistent with the conviction obtained in Evans's prior criminal proceeding. This argument, however, was not raised in the court of appeals. Therefore, appellant has waived the issue, absent a showing of plain error. *State v. Long* (1978), 53 Ohio St.3d 91, 7 O.O.3d 178, 372 N.E.2d 804; *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph two of the syllabus. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long, supra,* at paragraph three of the syllabus.

**{¶ 25}** Appellant cannot succeed on his claim of criminal collateral estoppel given his inability to satisfy one of the hallmarks of the doctrine: mutuality of parties. See *Standefer v. United States* (1980), 447 U.S. 10, 100 S. Ct. 1999, 64 L.Ed.2d 689. The defendant in *Standefer* asserted the same arguments that appellant offers and failed. *Id.* at 14, 100 S. Ct. at 2003, 64 L.Ed.2d at 694. The prior proceeding to which appellant points involved Evans and the state. Appellant was not a party to that action. Moreover, criminal collateral estoppel derives from the Double Jeopardy Clause, and Evans's prosecution did not put appellant in jeopardy. *Ashe v. Swenson, supra,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469;

*Massachusetts v. Dias* (1982), 385 Mass. 455, 432 N.E.2d 586. Collateral estoppel may be used to bar a later prosecution for a separate offense only where the government loses in the first proceeding. See *United States v. Dixon* (1993), 509 U.S. ___, ___, 113 S. Ct. 2849, 2860, 125 L.Ed.2d 556, 573. Finally, in order to consider a claim of collateral estoppel, this court must examine the record of the earlier proceeding in order to determine which issues were actually decided therein. *Sealfon v. United States* (1948), 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed.2d 180. A court cannot perform that function unless one of the parties brings the previous trial's record before it. Appellant offers the transcript from Evans's trial for the first time as an appendix to his brief filed with this court. "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus. The second proposition of law is accordingly overruled.[2]

C

**{¶ 26}** In his third and fifth propositions of law, appellant claims that the state introduced insufficient evidence to lead to a conviction. When a reviewing court examines the sufficiency of the evidence offered to support a criminal conviction, that court's function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational

---

2. Contrary to appellant's contention, the findings of the trial court in this case are not inconsistent with the finding related to Evans's conviction. Evans was convicted of involuntary manslaughter predicated on child endangering, in that she recklessly failed to seek medical attention for her daughter's injuries between January 16 and January 18, 1993. *State v. Evans, supra,* 93 Ohio App.3d 121, 637 N.E.2d 969. The evidence in the instant action clearly demonstrates that appellant hastened Sheila's death. Having done so, appellant cannot escape criminal liability by arguing that Sheila was going to die anyway. See 1 LaFave & Scott, Substantive Criminal Law (1986) 395, Section 3.12(b).

trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 27} In his third proposition, appellant contends that the state failed to prove that Sheila was killed *while* being raped as is required by R.C. 2903.01(B) in order to obtain a conviction for aggravated murder. Appellant argues that Sheila's death was caused solely by the intestinal injury inflicted on January 16, 1993, and thus, even if appellant did rape Sheila on January 18, he could not have killed her while raping her because the lethal injury had been inflicted two days earlier. The intestinal injury certainly contributed to Sheila's death, and according to Dr. Klein's testimony would have led to her death by itself if it had remained untreated. Appellant, however, brushes over the additional statements made by Dr. Cox which clearly indicate that Sheila died also as a result of the severe beating she sustained on January 18. Dr. Cox testified that the beating Sheila suffered on the morning of her death caused her intestine to rupture, which, along with numerous associated complications, led to her death. Appellant was the only adult male present in the apartment on January 18 before the paramedics arrived. He admitted that he had become sexually aroused during the beating so that he "thought about doing [Sheila] *** in the butt." The evidence presented by the state clearly supports a finding beyond a reasonable doubt that appellant raped and severely beat Sheila on the morning of January 18, 1993, as one continuous occurrence, and that the beating directly led to Sheila's death. Appellant's third proposition is overruled.

{¶ 28} In his fifth proposition of law, appellant claims that the state offered insufficient proof of a specific intent to kill. The evidence, contends appellant, demonstrates that he "only intended to cause harm, or he was so angry that he had no intent at all." In support of this assertion, appellant focuses on three facts. First, appellant points to his written confession where he admitted that he "just lost it"— *i.e.,* his temper—on the morning of January 18, 1993. Second, appellant

emphasizes that he attempted to save Sheila's life by giving her cardiopulmonary resuscitation. Finally, appellant draws attention to the fact that most of Sheila's bruises were inflicted to "nonvital areas" such as her arms, legs and buttocks.

{¶ 29} Appellant's arguments are unpersuasive. Sudden rage does not negate a purpose to kill. See, generally, *State v. Rhodes* (1992), 63 Ohio St.3d 613, 590 N.E.2d 261. While appellant did attempt to resuscitate Sheila, that attempt came more than an hour after the beating. The issue is what appellant intended to do at the time he committed the fatal acts, not whether he later changed his mind. Cf. *State v. Campbell* (1994), 69 Ohio St.3d 38, 48, 630 N.E.2d 339, 349-350. Finally, even though many of appellant's blows fell on nonvital areas, appellant also struck Sheila's head, certainly a vital area.

{¶ 30} The severe, protracted nature of the beating also indicates a purpose to kill. Sheila's body was covered with acute bruises. Appellant stated in his written confession, "I flip[p]ed out and I beat up Shiela [*sic*], by fist, stomach, (hit in stomach). Alot, hit hard, when hitting her I hit all over her body, and also threw her around ***." Dr. Cox noted evidence of "multiple blunt force traumatic injuries to the head." Multiple blows to the abdomen inflicted sufficient force to rupture Sheila's previously injured duodenum, to lacerate her liver, and to make her bleed internally. A blunt force traumatic injury to Sheila's chest bruised internal organs and caused them to bleed. The use of such substantial force by an adult on a three-year-old victim is certainly sufficient evidence from which a jury could reasonably find a purpose to kill.

{¶ 31} Finally, appellant claims in his fifth proposition that the state failed to prove a rape was committed on the morning of January 18, and thus the state failed to establish the felony-murder death specification. As discussed in connection with the third proposition, there was sufficient testimony by Dr. Cox from which a jury could reasonably find that a rape had occurred during the course of the killing. Appellant argues that Dr. Cox's testimony that Sheila had been

14

anally penetrated on the morning of January 18 was controverted by that of Dr. Izsak. Dr. Izsak noted findings that the girl had been anally penetrated, but he could not specify whether penetration had occurred on the day of her death. These two positions are not inconsistent. Dr. Izsak, as one of the emergency room physicians at Children's Hospital, did not perform the kind of intense examination that the coroner conducted. Even if the two opinions were discordant, that would create a credibility issue for the jury to resolve, not this court. Appellant's fifth proposition is overruled.

D

{¶ 32} In his sixteenth proposition of law, appellant contends that the trial court erroneously permitted the state to introduce evidence of bad character, *i.e.*, allegations that he made threatening phone calls to Fae Evans. Appellant waived the issue, absent plain error, since he failed to raise it in either the trial court or the court of appeals. Crim.R. 52(B); *State v. Wade* (1978), 53 Ohio St.2d 182, 188, 7 O.O.3d 362, 365, 373 N.E.2d 1244, 1248; *State v. Williams, supra,* 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraphs one and two of the syllabus.

{¶ 33} During the direct examination of Detective Perella, the prosecutor asked the officer what he did on the morning of January 20, 1993. Perella replied: "We had received two phone calls ***, one from Detective Gilbride stating that Fae Evans had received threats from the Phillips [f]amily ***." Perella testified that on January 20 he had intended to "Follow-up on those phone calls. *** [T]he second one was to interview Fae Evans reference to the threats that she said that she was receiving." Appellant did not object at trial, but now claims plain error.

{¶ 34} Pursuant to Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Long, supra,* 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of

the syllabus. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899.

{¶ 35} Appellant mischaracterizes the response by Perella as one which suggests that appellant himself made threatening calls. Perella specifically stated that the alleged threats were made by appellant's *family*. In addition, Perella's testimony concerning the threatening calls was not outcome-determinative. This portion of his testimony was brief, was not mentioned in closing arguments, and seems not to have been deliberately elicited. The evidence of appellant's guilt, including his written confession, is strong. Absent a showing of plain error, the sixteenth proposition is meritless.

E

{¶ 36} In his seventeenth proposition of law, appellant argues that the trial court should have excluded as irrelevant the expert testimony of James Wurster, a criminalist from the Ohio Bureau of Criminal Identification and Investigation. Wurster testified that certain stains which were detected on two blankets that were taken from Evans's home were human blood stains. He also testified concerning his examination of several long, narrow objects that were taken from Evans's home and the fact that none of the objects tested positive for the presence of blood.

{¶ 37} Appellant did not object to Wurster's testimony during trial. He did, however, object to the admission of the individual exhibits, but not until after the state rested, by which time the only remaining issue was whether the objects would be formally admitted into evidence and sent with the jury during their deliberations. The trial judge determined that only one exhibit would be sent to the jury, but each could be discussed during closing arguments.

{¶ 38} Given appellant's failure to timely object during Wurster's testimony, he has waived the issue of relevance at this late stage. Nevertheless, the record indicates that the expert testimony and the exhibits were relevant to the

state's case against appellant. The bloodstained blankets tend to support the allegation of anal intercourse. The fact that Wurster failed to determine the type of the blood found on the blanket relates to the weight of the evidence, not its admissibility. See *State v. Campbell, supra*, 69 Ohio St.3d at 50-51, 630 N.E.2d at 351. Furthermore, the objects were relevant given appellant's statements to Detective Falcone implying that Evans had sexually abused Sheila. Wurster's testimony served to rebut that implication. The proposition is overruled.

## II

### *Effective Assistance of Counsel*

{¶ 39} In his fourth proposition of law, appellant claims ineffective assistance of counsel during both his trial and his first appeal. The United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, enunciated the standard to be applied when determining whether counsel is ineffective. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Furthermore, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. See, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

{¶ 40} In support of his claim of ineffective counsel, appellant challenges several decisions that his counsel made during trial and in preparing an appeal. As a starting point, we recognize that this court "must assess the reasonableness of the attorney's decisions at the time they are made, not at the time of our assessment."

*State v. Wilkins* (1980), 64 Ohio St.2d 382, 390, 18 O.O.3d 528, 533, 415 N.E.2d 303, 309. Debatable trial tactics generally do not constitute a deprivation of effective counsel. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 37, 402 N.E.2d 1189, 1192.

{¶ 41} Appellant first contests the trial strategy in which appellant conceded that he had killed Sheila and that he had raped her on two occasions prior to January 18, 1993, but claimed that he had not raped her during the fatal beating. Appellant stated on the record while in the trial judge's chambers that he was aware of this strategy and that he agreed with it. After telling the jury that "this case is about a murder and it's about a rape, but not together," defense counsel urged the panel to consider the lesser included offense of murder and to deliberate as to why, after confessing to the beating and two earlier rapes, appellant would lie about raping Sheila on January 18, 1993. Appellant claims that admitting even partial guilt constituted ineffective assistance of counsel in this case.

{¶ 42} Appellant overlooks the fact that he had confessed to performing most of the acts of which he was accused. That confession made it very difficult for his attorneys to deny that the beating or the previous rapes had occurred, or to present any type of viable defense. It is "logical trial strategy" to contest the most serious charges and to concede those that are supported by "indisputable evidence and credible testimony." *United States v. Simone* (C.A.7, 1991), 931 F.2d 1186, 1195. See, also, *United States v. Leifried* (C.A.4, 1984), 732 F.2d 388, 390. Appellant asserts that his trial counsel should have argued solely that Sheila's death was caused by the January 16 beating. Counsel's rejection of this strategy, however, was neither deficient nor prejudicial given Dr. Cox's uncontradicted testimony that the January 18 beating led to the girl's death. Furthermore, the record indicates that defense counsel repeatedly challenged the state's proof of the felony-murder specification and urged the jury to consider a lesser included offense.

{¶ 43} Appellant next asserts that his counsel failed to probe the views of five members of the venire who indicated that they could not or would not vote for the death penalty, in order to keep them from being excused for cause. A review of the record indicates that counsel did attempt to rehabilitate some of those individuals. Further, each expressed strong feelings that he or she would be unable to follow the law in the event that the death penalty was warranted. This court has previously rejected similar claims concerning the selection of members of the venire because "counsel were in a much better position to determine if the jurors could be 'rehabilitated' ***." *Bradley*, *supra*, 42 Ohio St.3d at 143, 528 N.E.2d at 381.

{¶ 44} Appellant also complains that counsel failed to challenge for cause members of the venire who favored the death penalty. A juror's death-penalty views are cause for exclusion only if they prevent or substantially impair his or her ability to follow the law. *Morgan v. Illinois* (1992), 504 U.S. 719, 728, 112 S.Ct. 2222, 2229, 119 L.Ed.2d 492, 502; *Wainwright v. Witt* (1985), 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851-852. Appellant has not proven such impairment, and again, trial counsel stands in the better position to determine which members of the venire merit in-depth examination. *Bradley, supra*.

{¶ 45} Appellant also claims that his trial counsel was deficient in failing to question prospective jurors during voir dire about mitigation evidence. The members of the venire in this case were "death-qualified" in small groups. The record reveals that defense counsel posed questions to some members of each group as to whether they were capable of considering mitigation evidence. While it is true that the defense did not address specific mitigating factors, this court has upheld a trial court's refusal to permit such specific mitigation questions. See *State v. Bedford* (1988), 39 Ohio St.3d 122, 129, 529 N.E.2d 913, 920. Asking such questions is not essential to competent representation.

**{¶ 46}** Appellant contends that his counsel introduced "paltry evidence" in mitigation, and presented appellant in a manner that provided the jury with no reasonable means to recommend a sentence other than death. We disagree. The defense introduced six witnesses during the mitigation hearing in addition to appellant's unsworn statement. Appellant's grandmother, mother, father, brother and neighbor described appellant as a kind, helpful, friendly, and good person who never abused drugs or alcohol and who cared a great deal for all of Fae Evans's children. The defense also introduced the fact that appellant did not have a juvenile or criminal record, which appellant repeated in his unsworn statement. A defense psychologist presented expert testimony that appellant functions with a "low average" level of intelligence, that he is "a rather simple, emotionally immature, psychologically inadequate person" who is ill-equipped to deal with the pressures of a family situation. Added to the evidence of appellant's age (nineteen) and his expressed remorse, the evidence presented in mitigation fails to support a claim of ineffective assistance of counsel.

**{¶ 47}** Another complaint centers on what appellant describes as his trial counsel's disparaging comments and distancing of himself from appellant. Defense counsel began his summation in the penalty phase by telling the jury that his wife had asked him whether he might have to defend appellant, and he had replied, "*** I don't know that I could." Counsel then depicted appellant's crime as "horrendous." Given appellant's confession to beating and to raping the three-year-old girl, trial counsel likely believed that his candor and objectivity would enhance the credibility of his plea for appellant's life. Cf. *Simone, supra,* 931 F.2d at 1195. His comments do not make his representation ineffective. See *Wade v. Calderon* (C.A.9, 1994), 29 F.3d 1312, 1319.

**{¶ 48}** Appellant next accuses his attorneys of ineffective appellate assistance. On a criminal appeal as of right, appellant is entitled to effective assistance of appellate counsel, who must exercise reasonable professional

judgment in presenting the appeal. *Evitts v. Lucey* (1985), 469 U.S. 387, 397, 105 S.Ct. 830, 836, 83 L.Ed.2d 821, 830-831. He complains that counsel neither preserved a complete record in the trial court nor took steps to recreate it under App.R. 9(C) and (E). Specifically, appellant points to unrecorded sidebars, unrecorded motion hearings, and motions without recorded dispositions. This court faced a similar challenge in *State v. Tyler* (1990), 50 Ohio St.3d 24, 38, 553 N.E.2d 576, 593, where we concluded that "without knowing what happened during those portions of the trial, we are obviously in no position to find that it was prejudicial error not to record them." Appellant has not demonstrated prejudice in this case.

{¶ 49} Appellant further contends that his appellate counsel was ineffective because he failed to assert all of the issues before the Ninth District Court of Appeals that are now raised by the public defender before this court. Six issues were presented in the court of appeals, whereas thirty propositions of law have been offered for our consideration. In *Smith v. Murray* (1986), 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434, the United States Supreme Court determined that appellate counsel had not performed deficiently by failing to raise every possible issue before the court of appeals. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Id.* at 536, 106 S.Ct. at 2667, 91 L.Ed.2d at 445, quoting *Jones v. Barnes* (1983), 463 U.S. 745, 751-752, 103 S.Ct. 3308, 3312-3313, 77 L.Ed.2d 987, 994. See, also, *State v. Watson* (1991), 61 Ohio St.3d 1, 15-16, 572 N.E.2d 97, 110. We find each of the additional propositions that have been raised at this level to be meritless. Therefore, appellant was not prejudiced by his counsel's actions.

{¶ 50} Finally, appellant asserts that his appellate counsel's failure to make any argument related to the imposition of the death sentence constitutes *per se* ineffectiveness of appellate counsel. We disagree. R.C. 2929.05(A) requires a reviewing court to determine whether a sentence of death is warranted given all of

the circumstances surrounding the offense. The court of appeals stated in its judgment entry the conclusion that the death penalty was appropriate in this case, and explained that conclusion in its opinion. As a result, the issue was adequately addressed. Furthermore, appellant has failed to demonstrate any prejudice that may have resulted from his attorney's decision to forgo the issue in the appeal.

{¶ 51} For all of the foregoing reasons, appellant's fourth proposition of law lacks merit and is, therefore, overruled.

### III

*Outside Communication with Jurors*

{¶ 52} In his sixth proposition of law, appellant claims that out-of-court comments concerning appellant that were made to certain jurors in this case denied appellant's right to an impartial jury, to a reliable penalty determination and to due process. During a trial recess, four jurors and one alternate left the courthouse to smoke. Eleanore Crowe, a member of a grand jury panel that was also in recess, was already outside when the jurors in the instant action approached. Crowe chatted with some of the jurors, mentioned that she was a grand juror, and then said something about the Phillips case. All five jurors immediately returned to the courthouse and reported the comments to the bailiff.

{¶ 53} The trial court examined each of the jurors and Crowe. Two jurors heard Crowe say that she hoped appellant "gets it" or "gets whatever he deserves." One thought she said: "[T]he worst case that I was on was the Sheila Marie Evans case." One juror heard only the words "Sheila Marie Evans," while another heard "Sheila Marie" and "Goddamn." Jurors described Crowe's tone as "heated" or "agitated." Three jurors expressed the belief that Crowe had served on the grand jury that had indicted appellant, although she had not. All five of the jurors indicated that the experience would not influence their decision in the case. At the conclusion of his examination of the jurors, the trial judge stated that he was "satisfied that they put it out of their minds, they're not going to consider it."

Despite this finding, appellant contends that Crowe's remarks fatally compromised the jury's impartiality.

{¶ 54} When a trial court learns of an improper outside communication with a juror, it must hold a hearing to determine whether the communication biased the juror. *Smith v. Phillips* (1982), 455 U.S. 209, 215-216, 102 S.Ct. 940, 945, 71 L.Ed.2d 78, 84; *Remmer v. United States* (1954), 347 U.S. 227, 229-230, 74 S.Ct. 450, 451, 98 L.Ed. 654, 656. "In a criminal case, any private communication *** with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial ***. [T]he burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Id.* The Sixth Circuit, however, has held that the defense must prove that the juror has been biased. *United States v. Zelinka* (C.A.6, 1988), 862 F.2d 92, 95, citing *Smith v. Phillips, supra*; contra *United States v. Littlefield* (C.A.9, 1985), 752 F.2d 1429, 1431. In cases involving outside influences on jurors, trial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror. See *United States v. Daniels* (C.A.6, 1976), 528 F.2d 705, 709-710; *United States v. Williams* (C.A.D.C. 1987), 822 F.2d 1174, 1189; Annotation (1992), 3 A.L.R.5th 963, 971, Section 2.

{¶ 55} Appellant has failed to demonstrate that the trial judge in this case abused his discretion in proceeding with the trial and retaining the jurors. Each of the five jurors stated without hesitation that he or she would disregard Crowe's comments. In fact, one juror indicated that the incident reinforced her commitment to be fair. A juror's belief in his or her own impartiality is not inherently suspect and may be relied upon by the trial court. *Smith v. Phillips, supra*, 455 U.S. at 217, 102 S.Ct. at 947, 71 L.Ed.2d at 86, fn. 7; *Zelinka, supra*, 862 F.2d at 95-96. Furthermore, the jurors' actions in this case reveal that they understood both the impropriety of Crowe's remarks and their own obligation to be fair. First, when

Crowe began speaking about appellant and his case, the jurors immediately left the area and reported the contact to the bailiff. Thereafter, each juror made a conscious decision not to discuss Crowe's comments with one another.

{¶ 56} Appellant further claims that the trial court's failure to admonish one of the five jurors, juror Weir, to refrain from speaking about the incident with other jurors created an unacceptable risk that the entire jury was exposed to the outside influence. In support of his argument, appellant relies upon *United States v. Gaffney* (M.D.Fla. 1987), 676 F.Supp. 1544, 1556, which determined that "if just one juror receives prejudicial off-the-record information the prejudicial effect spills over and is viewed as having tainted all jurors." In this case, however, there was no prejudicial effect to spill over onto the other jurors as all five were able to ignore the incident. Furthermore, the comments made by Crowe were not inflammatory so as to prejudice the members of the jury. Compare *Stockton v. Virginia* (C.A.4, 1988), 852 F.2d 740, 741, where jurors were told that "they ought to fry the son of a bitch." Further, there is no indication whatsoever that Weir informed the other jurors of the incident, and we decline to presume that she did simply because the trial court failed to instruct her not to do so. Appellant's sixth proposition of law is accordingly overruled.

IV

*Prosecutorial Misconduct*

{¶ 57} In his seventh proposition of law, appellant alleges prosecutorial misconduct during both the guilt and the penalty phases. Appellant, however, failed to object to the alleged misconduct when it occurred, thereby waiving the issue absent plain error. *State v. Childs* (1968), 14 Ohio St.2d 56, 43 O.O.2d 119, 236 N.E.2d 545, paragraph three of the syllabus; Crim.R. 52(B).

A

*Guilt Phase*

**{¶ 58}** Appellant contends that the prosecutor made several misstatements during the state's closing argument which rise to the level of misconduct. We note that wide latitude is given to counsel during closing argument to present their most convincing positions. *State v. Stephens* (1970), 24 Ohio St.2d 76, 53 O.O.2d 182, 263 N.E.2d 773; *Shelton v. State* (1921), 102 Ohio St. 376, 131 N.E. 704. Where prosecutorial misconduct is alleged, the court must determine whether the remarks in closing argument were improper and, if so, whether the remarks prejudicially affected substantive rights of the defendant. *State v. Smith (*1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885; *United States v. Dorr* (C.A.5, 1981), 636 F.2d 117. "The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394, 400, citing *State v. Maurer, supra*, 15 Ohio St.3d at 266, 15 OBR at 402, 473 N.E.2d at 793.

**{¶ 59}** Appellant first claims that the prosecutor inaccurately argued that the coroner's testimony concerning whether Sheila had been anally raped was undisputed. During closing arguments, one of the prosecuting attorneys stated:

"The undisputed evidence in this case is that this Defendant anally raped Sheila Evans that Monday morning, January the 18th; that he penetrated her rectum area with his penis. Dr. Cox told you that that was his opinion based on reasonable medical certainty. It is the uncontradicted evidence in this case regarding the anal rape of this little girl."

**{¶ 60}** Appellant asserts that the evidence of anal rape on January 18 could not be described as uncontroverted because his written confession stated that he had not anally raped Sheila that Monday morning. A second prosecuting attorney appropriately considered that fact by stating that "no one has disputed that evidence, other than *Ronald Phillips and his statement*." The prosecuting attorneys did not misrepresent Dr. Cox's testimony. Rather, their statements referred to the fact that no one but the defendant had contradicted Dr. Cox's medical conclusions.

Appellant cites Dr. Izsak's testimony as conflicting. That characterization is inaccurate. Dr. Izsak testified that Sheila had been anally penetrated by a penis, although he was unable to pinpoint exactly when the penetration had occurred. Dr. Cox was simply able to offer more specific conclusions as a result of the autopsy he performed than Dr. Izsak could from his emergency room examination.

{¶ 61} Appellant also claims that the prosecutor's arguments, combined with the trial judge's instructions, created a conclusive presumption of purpose to kill "simply because [Sheila's] body was injured and because she died." Appellant again is incorrect. The assistant prosecutor said nothing about a presumption; she properly urged the jury to infer purpose from the manner of Sheila's death—a beating severe enough to cause more than one hundred twenty-five bruises, massive internal injuries, and extensive internal bleeding. None of these statements approaches misconduct.

B

*Penalty Phase*

{¶ 62} Appellant accuses the prosecutor of arguing nonstatutory aggravating circumstances during the penalty phase. The record indicates that the prosecutor reminded the jury that Sheila "probably on Saturday [January 16, 1993] was beaten severely *** and that because of that beating, Sheila Marie Evans was in pain [and] *** exhibited very clear symptoms of the injury ***." The prosecutor also referred to Sheila's defensive wounds, but she cited these facts to show that "nothing in the nature and the circumstances of this offense [is] mitigating ***." Contrary to appellant's position, the state neither characterized nor labeled those facts as aggravating circumstances.

{¶ 63} Appellant also spends a great deal of time arguing that the prosecution mischaracterized the meaning of mitigation evidence and the role that it plays when determining if the death penalty should be recommended. Upon thorough review of the transcript of the mitigation hearing, we find that the

prosecutor presented legitimate arguments which in no way misstated the law, confused the jury or prejudiced the defendant. The seventh proposition of law is accordingly overruled.

V

*Proceedings in Defendant's Absence*

{¶ 64} Appellant raises three different propositions of law in which he alleges that the trial court erroneously proceeded on certain issues in this case in appellant's absence. "In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." Section 10, Article I, Ohio Constitution. See, also, *State v. Williams* (1983), 6 Ohio St.3d 281, 286, 6 OBR 345, 349, 452 N.E.2d 1323, 1330; *Illinois v. Allen* (1970), 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 354. These arguments were not, however, raised before the court of appeals, and therefore are waived absent a showing of plain error. *State v. Williams, supra,* 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph two of the syllabus; Crim.R. 52(B).

A

*Note from Jury*

{¶ 65} In his eighth proposition of law, appellant asserts that the trial court provided the jury with supplemental instructions in appellant's absence. Contained within the record is a sheet of paper with the following question presented:

"We wish to have the following defined again[:] 'Aggravated Murder' with all included definitions[;] also 'Aggravated Murder' with 'Specification' with all included definitions."

{¶ 66} While the record indicates that the trial judge said he "reserved the right" to provide the jury with a written copy of his instructions if he received questions from them, the record does not reveal that the judge actually responded to the jurors' questions. Appellant appears to assume that the judge did in fact provide supplemental instructions, although there is no indication of such.

Appellant also complains that the trial court has failed to rule on his motion to correct the record to reveal the substance of those alleged additional instructions. He further asks this court to assume that he was not present at the time of the alleged instructions, and that the trial judge failed to inform him about the jury's questions. In terms of relief, appellant asks that his conviction be reversed or that the case be remanded to the trial court for reconstruction of the record.

{¶ 67} The record simply does not support either reversal or remand. This court has established that "[a] criminal defendant has a right to be aware of all communications with the jury, including any written jury instructions that are taken into the jury room for deliberations." *State v. Schiebel* (1990), 55 Ohio St.3d 71, 85, 564 N.E.2d 54, 70. Nevertheless, a trial court's proceedings are presumed regular unless the record demonstrates otherwise. This court cannot assume that the trial court provided any supplemental instructions, much less that they were given in appellant's absence, unless the record affirmatively indicates that to be true. *State v. Clark* (1988), 38 Ohio St.3d 252, 258, 527 N.E.2d 844, 851. Appellant fails to offer any indication or to explain how this court should determine that any unrecorded proceedings took place. Appellant's eighth proposition is overruled.

B

*Closed-Circuit Television Arraignment*

{¶ 68} In his tenth proposition of law, appellant contends that his arraignment over closed-circuit television violated his constitutional rights under the Confrontation and Due Process Clauses because he was not physically present in the courtroom at the time of his arraignment. In addition to failing to raise this issue in the court of appeals, appellant also failed to object in the trial court at the time of the arraignment. An issue is waived, absent a showing of plain error, if it is not raised at the trial level. *State v. Wade, supra*, 53 Ohio St.2d 182, 7 O.O.3d 362, 373 N.E.2d 1244; Crim.R. 52(B).

**{¶ 69}** The United States Supreme Court has long recognized that the accused has a right to be present at every critical stage of the proceedings against him or her. *Kentucky v. Stincer* (1987), 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631, 643; *Snyder v. Massachusetts* (1934), 291 U.S. 97, 105-106, 54 S.Ct. 330, 332, 78 L.Ed. 674, 678. Due process requires a defendant's presence only "to the extent that a fair and just hearing would be thwarted by his absence." *Id.* at 108, 54 S.Ct. at 333, 78 L.Ed. at 679. Far from a mere formalism, arraignment is a stage important enough to entitle the accused to the presence of counsel. *Kirby v. Illinois* (1972), 406 U.S. 682, 688-689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 416. Nevertheless, arraignment is not a procedure required by the Due Process Clause of the Fifth Amendment. *Garland v. Washington* (1914), 232 U.S. 642, 645, 34 S.Ct. 456, 457, 58 L.Ed. 772, 775; see *United States v. Coffman* (C.A.10, 1977), 567 F.2d 960. Nor is the Sixth Amendment right to confront witnesses implicated because there are no witnesses involved at that stage. *Snyder*, *supra*, 291 U.S. at 106-107, 54 S.Ct. at 332-333, 78 L.Ed. at 679. Moreover, the United States Supreme Court has held that closed-circuit television may satisfy the Confrontation Clause in limited circumstances. *Maryland v. Craig* (1990), 497 U.S. 836, 851, 110 S.Ct. 3157, 3166, 111 L.Ed.2d 666, 682 (use of closed-circuit television is permitted for taking testimony of child witnesses so long as the teleconferencing procedure is "functionally equivalent to that accorded live, in-person testimony").

**{¶ 70}** Ohio Crim.R. 10(B) requires that "[t]he defendant must be present except that the court, with the written consent of the defendant and the approval of the prosecuting attorney, may permit arraignment without the presence of the defendant, if a plea of not guilty is entered." The word "present," however, is not defined. In *Valenzuela-Gonzalez v. United States Dist. Court for the Dist. of Arizona* (C.A.9, 1990), 915 F.2d 1276, 1280, the federal court examined two

arraignment-related federal Rules of Criminal Procedure, Fed. R. Crim. P. 10[3] and 43(a),[4] and determined that a defendant's physical presence was required at his or her arraignment. "We hold that these rules together require that the district court must arraign the accused face-to-face with the accused physically present in the courtroom." *Id*. at 1280. Notably, however, the *Valenzuela-Gonzalez* court did not decide the issue on constitutional grounds. Rather, the court explained that it need not resolve the constitutional question because "[t]he protection of these rules [of criminal procedure] is broader than the constitution provides." *Id*. In contrast, the District of Columbia has determined that under certain circumstances, closed-circuit television may satisfy the presence requirement of Fed. R. Crim. P. 43, if the procedure is considered necessary by the court. See *United States v. Washington* (C.A.D.C. 1983), 705 F.2d 489, 497, fn. 4. In addition, several states[5] have adopted rules which permit the use of closed-circuit television for arraignments. See, *e.g.*, *Pennsylvania v. Terebieniec* (1979), 268 Pa. Super. 511, 519, 408 A.2d 1120, 1123-1124 (noting no "circus atmosphere" or unconstitutional prejudice from closed-circuit television appearances at arraignment).

{¶ 71} Ohio Crim. R. 1(B) instructs that the Rules of Criminal Procedure "shall be construed and applied to secure the fair, impartial, speedy, and sure administration of justice, simplicity in procedure, and the elimination of

---

3. Fed. R. Crim. P. 10, "Arraignment," provides:
    "Arraignment shall be conducted in open court and shall consist of reading the indictment or information to the defendant or stating to the defendant the substance of the charge and calling on the defendant to plead thereto. The defendant shall be given a copy of the indictment or information before being called upon to plead."

4. Fed. R. Crim. P. 43, "Presence of the Defendant," provides, in pertinent part:
    "(a) Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule."

5. Ariz. Crim.R. 14.2; Del.Super.Ct.Crim.R. 10(b); Fla.Crim.R. 3.160(a); Hawaii Penal R. 43(a); Idaho Crim. R. 43.1; Kan.Stat.Ann. 22-3205(b); La.Code Crim.Prac.Ann. Article 831B; N.M.Crim.R. 5-303(A)(1); Ore.Rev.Stat.Ann. 135.030(3)(b).

unjustifiable expense and delay." The use of closed-circuit television in connection with a defendant's appearance at arraignment constitutes a legitimate application of Crim. R. 10(B) in light of Crim. R. 1(B). In the instant action, appellant's arraignment over closed-circuit television was open to the public, created no additional publicity or attention, and in no way subjected appellant to a greater risk of prejudice than a personal appearance would have done. The trial judge asked appellant if he was able to hear and see the proceedings, to which appellant replied that he could. The defendant's actual, physical presence in the courtroom at the time of his arraignment "was not required to ensure fundamental fairness or a 'reasonably substantial *** opportunity to defend against the charge.'" *United States v. Gagnon* (1985), 470 U.S. 522, 527, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486, 487, quoting *Snyder, supra*, 291 U.S. at 105-106, 54 S.Ct. at 332, 78 L.Ed.2d at 679. Furthermore, "due process does not require the personal presence of a defendant in a courtroom before a judge when, through mechanical means, he can see the judge and the judge can see him." *In re Rule 3.160(a)* (Fla. 1988), 528 So.2d 1179, 1180. Therefore, we hold that arraignment of an accused via closed-circuit television is constitutionally adequate when the procedure is functionally equivalent to live, in-person arraignment. Upon review of appellant's arraignment, we find no constitutional violation. The tenth proposition is overruled.

## C

### *Video Deposition*

{¶ 72} In his fifteenth proposition of law, appellant contests the introduction of Dr. Klein's videotaped testimony based upon a claimed violation of the Confrontation Clause. Appellant at no time opposed the taking of Dr. Klein's deposition, objected to its use during trial, or raised the issue before the court of appeals. As such, the issue is waived absent a showing of plain error.

{¶ 73} The record fails to support appellant's contention that he was denied an opportunity to confront Dr. Klein face-to-face. Appellant was physically present

at Dr. Klein's deposition and thus was able to confront the witness. It is irrelevant that the face-to-face confrontation occurred during the deposition rather than during trial. What is important is that the confrontation occurred as Dr. Klein testified, since a witness is less likely to lie, or to lie convincingly, in the physical presence of the accused. See *Coy v. Iowa* (1988), 487 U.S. 1012, 1019-1020, 108 S.Ct. 2798, 2802, 101 L.Ed.2d 857, 862. Furthermore, contrary to appellant's contention, the state did raise the issue of Dr. Klein's unavailability to testify in court by virtue of a motion filed nearly one week prior to trial. Proposition of law fifteen is, therefore, without merit.

## VI

### *Suppression Issues*

{¶ 74} In his ninth proposition of law, appellant contends that his statements to the police concerning his involvement with Sheila's death were involuntary, and thus should have been suppressed. Specifically, appellant points to his youth and the "oppressive environment" in which he was interrogated as evidence that his confessions, both oral and written, were coerced.

{¶ 75} During a suppression hearing, Detective Perella testified that on January 18, 1993, appellant agreed to go to the police station for questioning, but that he was not arrested at that time. Detective Falcone testified that he interviewed appellant at police headquarters, during which time appellant was neither handcuffed nor restrained in any way. Appellant was placed in a small interview room, but the door remained unlocked throughout the questioning. Falcone read appellant his *Miranda* warnings, which appellant stated he understood. The officers observed appellant to be literate, alert, and free of any influence from drugs or alcohol. When asked if he wished to speak to the police concerning the events that led to Sheila's beating, appellant executed a form in which he agreed to answer questions and acknowledged that no promises, threats, pressure or coercion were

used to obtain his cooperation. Throughout the seven-hour interview, appellant was provided with food and occasional breaks.

**{¶ 76}** Perella testified that the second round of questioning occurred as a result of appellant's phone call to police headquarters indicating that he wished to speak with the officers assigned to Sheila's case. On January 20, 1993, appellant agreed to be transported to the police station, where he was again taken to an interview room and read his *Miranda* rights. He said he understood those rights and signed another waiver. Perella and another officer interviewed appellant for approximately two hours, at the end of which he prepared a written confession. That confession states at the end: "I willingly and freely give this statement to Det. Perella For help or counsel. R.P."

**{¶ 77}** During the suppression hearing, appellant claimed that he was locked in the interview room during his first meeting with police on January 18, although he admitted that no one had said he could not leave the detective bureau. Appellant also asserted that he did not call the police station on January 19, with an offer to talk with the detectives. Rather, appellant said that the police picked him up at his school on January 20, arrested and handcuffed him, and then locked him in the interview room. According to appellant, Perella refused to permit him to make a telephone call and told him that he "was not entitled to talk to a lawyer." Appellant denied either writing or signing the confession. He claimed that Perella told him that if he produced a written statement, Perella would see that he "got some kind of help."

**{¶ 78}** The trial judge orally denied appellant's motion to suppress without formal findings or a journal entry, but he did state that he believed Detective Perella's testimony "that he did not make any promises in order to get a statement from Mr. Phillips." The record supports denial of the motion. In *State v. Barker* (1978), 53 Ohio St.2d 135, 7 O.O.3d 213, 372 N.E.2d 1324, paragraph two of the syllabus, this court determined that "[i]n deciding whether a defendant's confession

is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." The totality of circumstances surrounding appellant's two interviews with police fails to sustain the contention that appellant's confession was involuntary. Appellant has not shown that the police used inherently coercive tactics which led him to confess. See, *e.g.*, *State v. Cooey* (1989)*,* 46 Ohio St.3d 20, 28, 544 N.E.2d 895, 908; *State v. Clark, supra*, 38 Ohio St.3d at 261, 527 N.E.2d at 854. Therefore, the ninth proposition is overruled.

{¶ 79} In his fourteenth proposition of law, appellant asserts that the police illegally searched Fae Evans's apartment. He therefore contends that the trial court should have suppressed the items that were seized from the apartment. Appellant, however, did not move to suppress the evidence obtained from the apartment. In *State v. Wade, supra,* 53 Ohio St.2d 182, 7 O.O.3d 362, 373 N.E.2d 1244, this court concluded that "[t]he failure [of a criminal defendant] to move within the time specified by Crim. R. 12(C) for the suppression of evidence on the basis of its illegal obtainment constitutes a waiver of the error. (Crim. R. 12[G].)" *Id*. at paragraph three of the syllabus. See, also, *State v. F.O.E. Aerie 2295 Port Clinton* (1988), 38 Ohio St.3d 53, 526 N.E.2d 66, paragraph two of the syllabus. Crim. R. 12(G), in turn, states that "[f]ailure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court *** or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for good cause shown may grant relief from the waiver." Appellant has failed to offer a convincing reason to warrant relief. The proposition is accordingly overruled.

## VII

### *Voir Dire Issues*

{¶ 80} In his eleventh proposition of law, appellant contends that he was denied his right to a fair and impartial jury as well as a reliable sentencing determination because some members of the venire were improperly excused for cause due to their views on the death penalty. Appellant neither objected during the voir dire nor raised the issue on appeal. The failure to object constitutes a waiver of the issue, since "absent an objection, the trial judge is denied an opportunity to give corrective instructions as to the error." *Wade*, *supra*, 53 Ohio St.2d at 188, 7 O.O.3d at 365, 373 N.E.2d at 1248. As a result, appellant must demonstrate plain error in order to prevail on this issue.

{¶ 81} A member of the venire may be challenged for cause if his or her views on capital punishment would prevent or substantially impair the performance of duties as a juror in accordance with his or her instructions and oath. *Wainwright v. Witt*, *supra*, 469 U.S. at 424, 105 S.Ct. at 852, 83 L.Ed.2d at 851-852; *State v. Buell* (1986), 22 Ohio St.3d 124, 139, 22 OBR 203, 215-216, 489 N.E.2d 795, 808. A trial court's findings may not be overturned if supported by substantial testimony. *State v. Tyler, supra*, 50 Ohio St.3d at 31, 553 N.E.2d. at 587.

{¶ 82} Appellant focuses on the exclusion of venireman Juchnowski, who stated during the introductory voir dire: "I don't feel I could be impartial in this case." During the death qualification, Juchnowski said: "[A]m I capable if the mitigating factors say to go one way or the other way, can I do that ***? I don't know." Asked whether his views "would prevent or substantially impair" his ability to follow instructions, Juchnowski replied, "I can't honestly answer that question because it might impair it, it very possibly could." Because the potential juror questioned his own impartiality and ability to follow the court's instructions, the trial court could reasonably find that his ability to perform in accordance with his instructions and his oath was substantially impaired.

{¶ 83} Finally, appellant complains that the trial judge asked the members of the venire whether they could impose the death penalty, but he did not ask

whether they would automatically impose it. Defense counsel, however, had a full opportunity to explore the latter question during his examination of the potential jurors, as was done with several members of the venire. Appellant's eleventh proposition lacks merit.

{¶ 84} In the twelfth proposition of law, appellant claims that the trial court erred by refusing to permit individual sequestered voir dire. Appellant again waived this issue by failing to raise it in the court of appeals, absent a showing of plain error. *State v. Williams*, *supra*, 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364; Crim.R. 52(B).

{¶ 85} This court addressed the issue of individual voir dire in *State v. Landrum* (1990), 53 Ohio St.3d 107, 117, 559 N.E.2d 710, 723, where we determined that "[n]either Ohio nor federal law requires individual voir dire. That issue is within the discretion of the trial judge." In the case at bar, the prospective jurors were voir dired in groups of six individuals during which time attorneys for both parties were permitted to address the members of the venire with specific questions. Appellant suggests that the trial court's decision to question the jurors in small groups led to "the entire venire [being] contaminated by prejudicial remarks from individual jurors and from the State's attorneys," and "failed to elicit honest responses from the prospective jurors." Appellant's arguments are entirely unfounded and the proposition is meritless.

VIII

*Speedy Trial Waiver*

{¶ 86} In his thirteenth proposition of law, appellant claims that his right to a speedy trial was denied when his trial counsel obtained a continuance, even though appellant consented on the record to the waiver of his speedy trial rights. Appellant asserts that the error stems from the trial court's failure to sufficiently determine whether he knowingly and voluntarily entered into the waiver. We note that appellant failed to raise this issue in the court of appeals, and therefore waived

all but plain error. *State v. Williams, supra,* 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364; Crim.R. 52(B).

{¶ 87} On February 23, 1993, appellant waived in writing his statutory right to be tried within ninety days of his arrest as required by R.C. 2945.71(C) and (E), stating, "I consent to the continuance of my case within a reasonable time." Appellant does not claim that this first waiver was invalid. The trial court then set the case for trial beginning May 24, 1993. On April 22, appellant's counsel filed a motion to continue the trial, complaining of insufficient preparation time. On April 27, 1993, appellant appeared in court with counsel, who agreed to a motion hearing on June 1 and to commence trial on August 9, 1993. The record indicates the following exchange occurred in court concerning the requested continuance:

"MR. O'BRIEN [defense counsel]: My client is aware of the situation, is prepared to waive his right to a speedy trial at this time, Your Honor, and agree [*sic*] to that August 9th date.

"THE COURT: *** Are you in agreement with those dates?

"THE DEFENDANT: Yes, sir, I am.

"THE COURT: You understand that may be beyond the time that this Court would be obligated by law to provide a trial to you; you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: In other words, you and your Attorneys have asked the trial be delayed and you are agreeing with that; is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: Okay. The Court is satisfied that this request is being knowingly, intelligently made."

{¶ 88} Appellant claims that in addition to asking the above questions, the trial court should have made certain that he understood the nature and the purpose of his speedy trial right, and that he appreciated its functions and protections. Absent such a determination, appellant claims, his waiver could not be knowing or

voluntary. Appellant does not, however, cite a single case which would require a court to inform a defendant of the purpose, functions, or protections of the right being waived. A trial court need not "enumerate all the possible implications of a waiver" of constitutional rights in order for that waiver to be knowing and voluntary. *State v. Jells* (1990), 53 Ohio St.3d 22, 26, 559 N.E.2d 464, 468 (jury waiver). We find that the trial court in this case sufficiently informed appellant of the meaning of his right to a speedy trial. It was defense counsel's responsibility to inform him of the specific advantages and disadvantages of such a waiver. The thirteenth proposition is overruled.

IX

*Jury Instructions*

{¶ 89} In propositions of law eighteen through twenty-two, appellant takes issue with the instructions the trial court provided to the jury. None of these issues was raised in either the trial court or the court of appeals, and thus each has been waived absent a demonstration of plain error. *State v. Williams*, *supra,* 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364; Crim.R. 52(B).

{¶ 90} The trial judge instructed the jury that purpose "is determined from the manner in which [an act] is done, the means used and all the other facts and circumstances." In his eighteenth proposition of law, appellant contends that this instruction created "a mandatory rebuttable presumption" of intent to kill. This instruction, contrary to appellant's position, did not command the jury to "infer the presumed fact if the State proves certain predicate facts.*" Francis v. Franklin* (1985), 471 U.S. 307, 314, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344, 350; see, also, *State v. Campbell*, *supra*, 69 Ohio St.3d at 48-49, 630 N.E.2d at 350. Nor did the instruction even invite the jury to draw a particular inference from any particular facts. It simply set forth general categories of evidence from which the jury could determine the purpose of an act.

{¶ 91} Appellant also argues that R.C. 2903.01(D) required the trial court to instruct the jury that any inference that the jury would make from the deadly nature of the offense was a permissive inference rather than conclusive. R.C. 2903.01(D) does not apply in this case because the trial court never instructed that the jury could infer purpose to kill from the commission of an underlying felony in a manner "likely to produce death."

{¶ 92} In his nineteenth proposition of law, appellant contends that the trial court's instruction that defined causation in terms of foreseeability permitted a conviction without a finding of specific intent to kill. See *State v. Burchfield* (1993), 66 Ohio St.3d 261, 263, 611 N.E.2d 819, 820-821. The use of that instruction, however, does not require reversal where the instructions as a whole make clear that the jury must find purpose to kill in order to convict. *Id*. at 262-263, 611 N.E.2d at 820. In the case at bar, the trial court's instructions did make that clear.

{¶ 93} In the twentieth proposition, appellant asserts that the trial court improperly injected the issue of punishment into the guilt phase of the proceedings. Appellant specifically complains about the following instruction the trial judge gave to the jurors:

"You should not discuss or consider the subject of punishment in your deliberation. Well, actually, I guess, in this case, considering the specification, now, you will be brought back *later*, if, in fact, you make a finding of guilty of aggravated murder and the specification. So on this occurrence, I *guess you're not discussing the matter of punishment* in your deliberation. Your duty is *confined* to determining the guilt or innocence of the accused." (Emphasis added.)

{¶ 94} Appellant asserts that this statement created a substantial risk that the jury deliberated on the issue of punishment when they should have been limited to a discussion of guilt or innocence. The clear import of the judge's statement

negates appellant's contention. Any reasonable juror would have taken the instruction as a warning not to consider punishment during the guilt phase.

{¶ 95} Appellant also contends that the trial court improperly instructed the jury and led the panel to believe that a finding of death would merely constitute a recommendation to the judge as prohibited by *Caldwell v. Mississippi* (1985), 472 U.S. 320, 328-329, 105 S.Ct. 2633, 2639, 86 L.Ed. 2d 231, 239. This court rejected the same argument in *State v. Durr* (1991), 58 Ohio St.3d 86, 93, 568 N.E.2d 674, 682, where we determined that "'*Caldwell* *** is inapplicable where the statements made to the jury during the mitigation phase of a capital trial were accurate statements of the law and were not made to induce reliance on the appellate process.'" Quoting *State v. Rogers* (1986), 28 Ohio St.3d 427, 28 OBR 480, 504 N.E.2d 52, paragraph one of the syllabus, reversed and remanded on other grounds (1987), 32 Ohio St.3d 70, 512 N.E.2d 581. The instruction in this case represented an accurate statement of the law and was not geared to induce the jury's reliance on the appellate process. See, *e.g*., *State v. Hicks* (1989), 43 Ohio St.3d 72, 79-80, 538 N.E.2d 1030, 1039.

{¶ 96} In his twenty-first proposition of law, appellant claims that the definition of mitigating factors under R.C. 2929.04(B)(7) is unconstitutionally misleading because it permits the sentencer to convert a catchall mitigating factor into a reason for imposing the death penalty. The trial judge defined the catchall mitigating factor according to the language of 2929.04(B)(7) as "any factors that are relevant to the issue of whether the offender should be sentenced to death." Appellant favors a definition which defines the (B)(7) factors as those "relevant to whether the defendant receives a *life* sentence." (Emphasis *sic*.) Although appellant raised this issue in the trial court, he failed to pursue it in the court of appeals, thereby waiving it at this stage. *State v. Williams, supra*, 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364; Crim.R. 52(B). Moreover, the jury was

specifically told that (B)(7) factors are *mitigating*. The jurors could not have reasonably construed that as an invitation to consider nonstatuory aggravation.

{¶ 97} Finally, in his twenty-second proposition, appellant objects to the trial court's instruction that "[m]itigation factors are factors that, while they do not justify or excuse the crime, nevertheless, in fairness and mercy may be considered by you as reducing the degree of the Defendant's blame or punishment." The same instruction was considered in *State v. Woodard* (1993), 68 Ohio St.3d 70, 77, 623 N.E.2d 75, 80, where we determined that "[t]he jury instructions in this case, taken as a whole, indicate that the penalty phase of appellant's trial was for a determination of punishment -- not for the assessment of 'blame' or culpability." See, also, *State v. Lawrence* (1989), 44 Ohio St.3d 24, 29, 541 N.E.2d 451, 457.

{¶ 98} For all of the foregoing reasons, we overrule propositions eighteen through twenty-two.

## X

### *Sentencing Opinion*

{¶ 99} In this twenty-third proposition, appellant contends that the trial court's sentencing opinion fails to give effect to all of the mitigation evidence offered by appellant. Appellant erroneously assumes that evidence that is not specifically mentioned in an opinion was not considered. While a sentencing court must consider all evidence of mitigation, it need not discuss each factor individually. *Parker v. Dugger* (1991), 498 U.S. 308, 314-315, 111 S.Ct. 731, 736, 112 L.Ed.2d 812, 822. Further, even if "the trial court in this case should have more explicitly analyzed the mitigating evidence," this court's independent reweighing will rectify the error. *State v. Lott* (1990), 51 Ohio St.3d 160, 171-172, 555 N.E.2d 293, 305. We accordingly overrule this proposition.

## XI

### *Appellate Issues*

{¶ 100} In his twenty-sixth proposition of law, appellant argues that this appeal should be remanded to the court of appeals because the record is incomplete. He focuses on the trial court's failure to record sidebar conferences or to file journal entries showing its disposition of certain pretrial motions. Appellant, however, failed to object at trial; at the appeals court he did not "invoke *** App.R. 9(C) or 9(E) to reconstruct what was said or to establish its importance." *State v. Brewer* (1990), 48 Ohio St.3d 50, 61, 549 N.E.2d 491, 502. The issue is therefore waived. *Id*. See, also, *State v. Grant* (1993), 67 Ohio St.3d 465, 481, 620 N.E.2d 50, 68. Furthermore, pursuant to our discussion in Part II, *supra*, appellant has failed to demonstrate prejudice stemming from this claimed error.

{¶ 101} Appellant also claims that the court of appeals failed to adequately review his death sentence by failing to refer to any of appellant's mitigation evidence in its "Decision and Journal Entry." The Ninth District Court of Appeals did, however, specifically conclude in the "Separate Opinion Pursuant to R.C. 2929.05(A)" that upon its independent review of the evidence, the aggravating circumstance outweighed the mitigating factors beyond a reasonable doubt. Appellant contends that the appellate court erred by not detailing why the aggravation outweighed the mitigation. This court has determined on numerous occasions that our independent evaluation of the evidence will cure any error committed by either the trial court or the court of appeals in sentencing or reviewing a sentence. See *State v. Richey* (1992), 64 Ohio St.3d 353, 370, 595 N.E.2d 915, 929; *State v. Lott, supra; State v. Landrum, supra*, 53 Ohio St.3d 107, 559 N.E.2d 710. See, also, *Clemons v. Mississippi* (1990), 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725. This includes situations such as the one at bar. In a capital case where a court of appeals fails to individually identify or discuss any evidence offered in mitigation but simply concludes that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt, this court's independent review and

assessment of the mitigation evidence will rectify any claimed appellate sentencing error. See Part XIII, below.

## XII

### *Settled Issues*

{¶ 102} In his twenty-seventh proposition of law, appellant asserts the inadequacy of Ohio's version of proportionality review. Proposition of law twenty-eight challenges the "reasonable doubt" definition the trial judge provided to the jury. In his twenty-ninth proposition, appellant contends that the felony-murder capital sentencing scheme is unconstitutional because the aggravating circumstances for felony-murder are the same as the elements for aggravated murder. These arguments "resurrect well-settled issues and [can be] summarily overruled." *State v. Campbell, supra,* 69 Ohio St.3d at 54, 630 N.E.2d at 353. See, respectively, *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph one of the syllabus; *State v. Jenkins, supra,* 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph eight of the syllabus; and *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, paragraphs one and two of the syllabus. Moreover, the twenty-eighth proposition of law was not raised in either the trial court or the court of appeals, and thus is waived. See *State v. Williams, supra*, 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364; Crim.R. 52(B).

{¶ 103} In his thirtieth proposition of law, appellant raises constitutional challenges to Ohio's death penalty scheme. These arguments have been rejected in numerous previous decisions issued by this court. See, *e.g.*, *State v. Lorraine* (1993), 66 Ohio St.3d 414, 426, 613 N.E.2d 212, 222; *State v. Henderson, supra*, 39 Ohio St.3d 24, 528 N.E.2d 1237; *State v. Jenkins, supra,* 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264.

{¶ 104} Appellant does, however, offer one argument in support of his attack on Ohio's death penalty that has not previously been considered by this court. Appellant contends that capital punishment violates the American Declaration of

the Rights and Duties of Man, which appellant claims binds the United States via the Charter of the Organization of American States. This claim is meritless. The declaration does not mention the death penalty; it forbids only "cruel, infamous, or unusual punishment." Moreover, the declaration is not legally binding, but rather was adopted "as a resolution containing common standards of treatment which the states desired to protect." Note (1990), 32 Wm. & Mary L. Rev. 161, 181. Nor does the OAS Charter incorporate the declaration. Even if it did, the United States Senate approved the charter with the reservation that "none of its provisions shall be considered as *** limiting the powers of the several states *** with respect to any matters recognized under the Constitution as being within the reserved powers of the several states." Charter of the Organization of American States (1951), 2 U.S.T. 2394, 2484. The proposition is accordingly overruled.

XIII

*Independent Review and Proportionality Analysis*

{¶ 105} In his twenty-fourth proposition, appellant maintains that the aggravating circumstance does not outweigh the mitigating factors beyond a reasonable doubt. The evidence presented during trial established one aggravating circumstance, namely, that appellant murdered Sheila while committing the offense of rape (R.C. 2929.04[A][7]). Against this, appellant offers several mitigating factors: youth, lack of significant criminal history, residual doubt, "emotional and mental deficiencies," positive character traits, and Evans's role in Sheila's death.

{¶ 106} Appellant argues that his history, character, and background provide significant mitigation value. The statements of six witnesses who testified during the sentencing hearing demonstrate that appellant was raised in a home where the law was not respected. Appellant's father was convicted of receiving stolen property and of obstructing justice for helping his son flee to avoid prosecution. Appellant's mother was convicted of aggravated narcotics trafficking. While this evidence carries some weight, this court has not given dispositive weight

to a defendant's poor upbringing. See, *e.g.*, *State v. Grant, supra*, 67 Ohio St.3d at 486, 620 N.E.2d at 71; *State v. Sneed* (1992), 63 Ohio St.3d 3, 20, 584 N.E.2d 1160, 1174; *State v. Montgomery* (1991), 61 Ohio St.3d 410, 419, 575 N.E.2d 167, 174.

{¶ 107} Appellant stresses his ability to adjust to prison life. Dr. James Brown, a defense psychologist, expressed the opinion that appellant may do well in a highly structured, regimented atmosphere. Appellant "needs to know *** who has authority and *** what the consequences are of not obeying authority." This evidence is mitigating, if true, but Dr. Brown's conclusion is undermined by appellant's record of rebelling against authority. He was suspended from school on numerous occasions, including once in October 1992 for gross insubordination to a teacher, and again in November 1992 for threatening the same teacher.

{¶ 108} Appellant's family members and neighbor described him as a hard-working individual who respected adults and extended help to others. Although he was raised on a "bad street," he avoided drugs and alcohol, and transferred out of one high school to avoid its "gang-like atmosphere" and drug use. On the other hand, appellant was suspended on various occasions after the transfer to a new school for fighting, threatening others, and assaulting a girlfriend.

{¶ 109} Appellant attempted to support his son and to be a father to both of Evans's girls. This evidence, however, is weak given appellant's own statements concerning the abuse he inflicted on Sheila. Appellant further claims that Evans is partly responsible for Sheila's murder because she left her children alone with appellant despite his immaturity and past sexual abuse of Sheila. This fact is not mitigating given the evidence which clearly indicates that the brutal and ultimately fatal beating Sheila sustained on the morning of January 18, 1993, resulted from appellant's voluntary, independent actions without any involvement by Evans.

{¶ 110} Appellant also raises certain statutory mitigating factors. At the time of the murder, appellant was nineteen years of age. This court has determined in prior cases that when a defendant kills at the age of eighteen or nineteen, the

element of youth pursuant to R.C. 2929.04(B)(4) is entitled to little weight. See *State v. Slagle, supra*, 65 Ohio St.3d at 613, 605 N.E.2d at 931; *State v. Hill* (1992), 64 Ohio St.3d 313, 334, 595 N.E.2d 884, 900; *State v. Powell* (1990), 49 Ohio St.3d 255, 264, 552 N.E.2d 191, 200-201. Accordingly, we assign little weight to this factor. Appellant also has no prior criminal convictions or delinquency adjudications. Pursuant to R.C. 2929.04(B)(5), we find that this fact is entitled to some weight in mitigation.

{¶ 111} Appellant claims his mental and emotional problems are mitigating under R.C. 2929.04(B)(7). Dr. Brown testified that appellant possesses an intelligence quotient of eighty-seven, "low average," but that he is not mentally impaired. While appellant exhibits no mental disease, Dr. Brown described him as "a rather simple, emotionally immature, psychologically inadequate person" who is ill-equipped to deal with the pressures of a family situation. As a result, his anger builds so that when it is released, "it seems way out of proportion to what may trigger it." Immaturity, however, deserves little if any weight in mitigation. Many, if not most, murderers are immature, and their crimes result from "immature selfishness, ego or rage." *State v. Slagle, supra,* 65 Ohio St.3d at 613, 605 N.E.2d at 931.

{¶ 112} Appellant also asserts that his attempt to revive Sheila prior to the arrival of the ambulance is entitled to consideration. If sincere, efforts to revive an individual are mitigating, since they indicate remorse and renunciation. Cf. *State v. Richey, supra*, 64 Ohio St.3d at 372, 595 N.E.2d at 930 (ostensible efforts to save victim not mitigating). On the other hand, remorse did not keep appellant from lying to the police about the source of Sheila's bruises.

{¶ 113} Finally, appellant claims that residual doubt exists as to whether appellant committed aggravated murder. This claim lacks merit, since the evidence against appellant overwhelmingly supports a finding of guilt. Appellant confessed to beating three-year-old Sheila on the morning of January 18, 1993. He further

admitted to having anally sodomized her, although he contends he merely penetrated Sheila with his finger that morning. The consistent and uncontroverted medical evidence presented by Dr. Cox indicates otherwise. Furthermore, appellant's contention that he lacked the required intent to kill because he beat Sheila during a period of rage is unpersuasive. As stated previously, sudden rage does not negate a purpose to kill. See, generally, *State v. Rhodes, supra,* 63 Ohio St.3d 613, 590 N.E.2d 261.

{¶ 114} Based upon the foregoing, we conclude that the aggravating circumstance in this case outweighs the mitigating factors beyond a reasonable doubt.

{¶ 115} Finally, in his twenty-fifth proposition of law, appellant maintains that the sentence in this case is disproportionate to the penalty imposed in Evans's allegedly similar case. Evans was convicted of involuntary manslaughter with a specification, based upon child endangerment. She was not convicted of purposefully causing Sheila's death. Therefore, our proportionality consideration, as defined by R.C. 2929.05(A), does not extend to Evans's case.

{¶ 116} This court has upheld death sentences in cases which present only a single felony-murder aggravating circumstance. See, *e.g.*, *State v. Woodard, supra,* 68 Ohio St.3d 70, 623 N.E.2d 75 (aggravated robbery); *State v. Fox* (1994), 69 Ohio St.3d 183, 631 N.E.2d 124 (kidnapping); *State v. Franklin* (1991), 62 Ohio St.3d 118, 580 N.E.2d 1 (aggravated burglary). In *State v. Powell, supra*, 49 Ohio St.3d 255, 552 N.E.2d 191, this court affirmed the death sentence of a defendant who was convicted of murder during the commission of kidnapping and attempted rape. Appellant's death sentence in this case is neither excessive nor disproportionate.

{¶ 117} For all of the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, F.E. SWEENEY, PFEIFER and COOK, JJ., CONCUR.

————————————