The STATE of Ohio, Appellee,

v.

WELLS, Appellant.

[Cite as *State v. Wells* (2001), 145 Ohio App.3d 246.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 78188.

Decided Aug. 13, 2001.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Richard J. Bombik,* Assistant Prosecuting Attorney, for appellee.

*James A. Draper,* Cuyahoga County Public Defender, and *Robert M. Ingersoll,* Assistant Public Defender; *Deward Wells, pro se,* for appellant.

KARPINSKI, Administrative Judge.

Defendant-appellant appeals his nine-year sentence for voluntary manslaughter as not comporting with the new sentencing schedule. He also complains that he received ineffective assistance of counsel.

Appellant Deward Wells was indicted for one count of murder and pleaded guilty to one count of voluntary manslaughter. Originally the trial court sentenced him to the maximum sentence of ten years, although Wells had not had a previous prison term. That sentencing was reversed by this court and remanded to the trial court for resentencing because the trial court had not included its reasons for imposing the maximum sentence as required by R.C. 2929.14.[1] The court then sentenced Wells to nine years' imprisonment, stating that "[t]hree years is not an adequate sentence for voluntary manslaughter." The court also took into consideration Wells's "prior record, recidivism factors and the fact that many of the offenses that [he had] previously pled guilty to involved violence. I don't think the three-year sentence will adequately protect the public from the likelihood of future crimes by yourself, Mr. Wells."

The crime Wells was charged with occurred under the following circumstances: both Wells and the victim lived in a rooming house. Wells was in his room when the victim, who was naked, began pounding on the community bathroom door and yelling. When Wells opened the door to his room, a fight ensued during which

---

1. See *State v. Wells* (1999), 133 Ohio App.3d 392, 728 N.E.2d 408.

the victim allegedly hit Wells over the head with a beer bottle. Wells offered no evidence to support this allegation that he had been struck by the bottle. Defendant then went back into his room, got a knife, and returned to the hall. He stabbed the victim repeatedly, even after the victim was on the floor. Wells then fled.

For his first assignment of error, appellant states:

"I. Deward Wells has been deprived of his liberty without due process of law by the sentence imposed in the case at bar, because [*sic*] did not comport with Ohio's new sentencing scheme."

The new sentencing law, Senate Bill 2, provides mandatory guidelines for courts to follow in sentencing offenders. The purposes of the new felony sentencing law are "to protect the public from future crime by the offender * * * and to punish the offender." R.C. 2929.11(A). It is important for the court to ensure, however, that the sentence imposed is "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and [is] consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

Senate Bill 2 clearly specifies the range of sentences for the court to impose. For a first degree felony such as voluntary manslaughter, the range of possible sentences is from three to ten years. R.C. 2929.14(A)(1). Except in limited circumstances outlined in the statute, however, "if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense * * * unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender * * *." R.C. 2929.14(B). Although Wells has a significant criminal history, he has never served a prison sentence for any of his crimes.

 Wells argues that the trial court misapplied the standard outlined above when the court reasoned that a three-year sentence demeaned the seriousness of the offense because "an individual is left dead as a result of this crime * * *." Wells points out that the death of the victim is an essential element of the crime of voluntary manslaughter, and therefore the legislature's intent was to show that, in at least certain circumstances, three years was an adequate sentence and did not demean the crime. The court was required to find more, he argues, to support a sentence of longer than three years for Wells.

In the second sentencing hearing, the court stated on the record: "I am going to take into account your prior record, recidivism factors and the fact that many of the offenses that you've previously pled guilty to involved violence." After considering those factors, the court concluded that it did not "think that the

three-year sentence will adequately protect the public from the likelihood of future crimes by * * * Mr. Wells." *Id.* The trial court, therefore, adequately specified a proper criterion—protecting the public—as well as the supporting facts—a history of violence.

Additionally, in making its sentencing determination the court stated that it considered the statements of two witnesses. The first witness, Wells's social partner, stated in her sworn investigation statement that she saw Wells standing over the victim with a knife in his hand and that Wells told her that "he and the Dude [the victim] had been feuding since last Friday over $5.00." State's Exhibit No. 1. He also told her that the victim threw a bottle at him. *Id.*

The second witness, a neighbor who lived on the same floor, stated in his sworn investigation statement that Wells had stated as he stood over the victim " 'This is for calling me a son of a bitch.' " State's Exhibit No. 2. The witness also stated that the first time he saw the victim he saw only one stab wound, but that, after he went downstairs to call 911 and then returned to the scene, the victim had several stab wounds. He also heard the victim yell while he was downstairs.

■ A review of the record indicates that the court considered the various relevant factors in R.C. 2929.12: for example, the trial court stated that "[t]he elements of the voluntary manslaughter charge were that there was serious provocation, I think that appears to be the case here."[2] This statement demonstrates the court considered a possibly mitigating factor—provocation.

The trial court went on to qualify as follows: "However, taking into account * * * Mr. Mills['s] and Ms. Jones' statements, I feel that a nine-year prison sentence in this case is appropriate * * *." These witnesses had provided statements that the fight between Wells and the victim was over $5.00 and mere name-calling and that Wells continued to stab the victim even after he cried out for help. The court's express reference to the statements of these witnesses indicates that the court considered factors such as the spitefulness of the attack. These statements also provide a foundation for a "near maximum" sentence because the seriousness of Wells's crime would be demeaned by a shorter sentence.

However, since the court did not sentence defendant to the maximum, the court was not required to specify the statutory bases for its sentence. The court's discussion implicitly demonstrated that it considered the relevant factors, and its finding that three years would not be enough to protect the public from the

---

**2.** As we stated in *Wells I,* "the existence of provocation * * * does not further detract from the seriousness of the voluntary manslaughter offense." Although the provocation reduces the crime from murder to voluntary manslaughter, we noted that it does not bar a sentence higher than the minimum. *Id.* at 395, 728 N.E.2d at 410.

danger Wells presents is enough to satisfy the overriding purposes of the sentencing statutes as well as the specific requirements of R.C. 2929.14 applicable here. The trial court did not err in imposing a nine-year sentence on the appellant.

For his second assignment of error, appellant states:

"II. Deward Wells was denied his constitutional right to effective assistance of counsel by his counsel's inadequate representation during his sentencing."

Appellant claims that his attorney did not represent him properly because the attorney admitted during the sentencing hearing that a three-year sentence would "demean the seriousness of the crime." The attorney then went on to argue that a ten-year sentence was too long because Wells had never been incarcerated before. Rather, the attorney told the court that he thought his "client is entitled to receive a sentence somewhere in the middle of the appropriate range of three to ten years."

The attorney then proceeded to address his reasons for his recommendation. Counsel noted that the victim was intoxicated and tested positive for cocaine, and pointed out inconsistencies in the witnesses' statements.

Noting that although his client had an arrest record "a page and a half" long, the attorney stated that most of Wells's offenses occurred when he was younger. Conceding that Wells was arrested for kidnapping, robbery, and rape between 1978 and 1984, counsel argued that his more recent offenses were less serious and that therefore he hoped that "the Court would not impose anything near the high end simply to avoid the statutory requirement necessary to support the ten-year sentence as a means of circumventing the legislative intent."

A criminal defendant has a constitutional right to effective counsel guaranteed by both the Sixth Amendment to the United States Constitution and by Section 10, Article I of the Ohio Constitution. The Supreme Court of Ohio, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, provided the two requirements necessary to prevail on an ineffective assistance of counsel argument. " 'First, the defendant must show that counsel's performance was deficient.' " *State v. Phillips* (1995), 74 Ohio St.3d 72, 84, 656 N.E.2d 643, 658. If the defendant's argument survives this hurdle, he must then show that " 'there is a reasonable probability that, but for counsels [*sic*] unprofessional errors, the result of the proceeding would have been different.' " *Id.*

Wells provided no evidence that counsel's argument was anything other than sound trial strategy. The court had reviewed Wells's criminal record prior to the sentencing hearing. The attorney raised Wells's record during the hearing, to emphasize that it was remote history and that, apart from the current crime, Wells had been living a relatively law-abiding life. Wells's counsel did not

prejudice defendant by bringing up criminal history the court was already aware of.

Wells also argues that his counsel should have pushed for a three-year sentence, the minimum required. It is not unsound strategy, however, to assume that because the prior sentence had been the maximum, the court was unlikely to impose the minimum this time around. By urging the court "not to impose anything approaching the high end for reasons that there's no evidence in the record to support that," counsel was attempting to ensure that his client received a middle sentence despite his extensive criminal record.

█ Finally, Wells argues that his attorney refused to inform the court that Wells had been the victim of several assaults himself, and therefore he reacted more strongly to being attacked with a beer bottle than another man might have. Discussing other altercations Wells had been involved in might have led the court to consider him more, not less, violent. At the sentencing, however, Wells himself told the court he was twice assaulted, once causing his jaw to be broken in two places. The court stated that its decision was based on Wells's history of violence. We cannot say, therefore, that counsel's decision was unsound strategy. Furthermore, no prejudice resulted since the defendant himself provided the information.

The second assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KENNETH A. ROCCO and PATRICIA A. BLACKMON, JJ., concur.