OPINION
{¶ 1} This is an appeal of a judgment of the Trumbull County Court of Common Pleas, from a jury verdict, finding for appellee, Joseph J. Brown, and against appellant, Jerilynn Armstrong.
 {¶ 2} On May 25, 1995 a truck, driven by appellee, struck a minivan, driven by appellant, on State Route 5 in Trumbull County. At the time of the accident, appellant's infant son, Cody, was a passenger in the minivan. Some time after the accident, Cody began exhibiting a "failure to thrive," and subsequently has been found to have mental and physical disabilities.
 {¶ 3} The matter came for trial on June 5, 2000. At trial, appellee admitted negligence; the sole issues remaining were proximate cause and damages. Appellant presented the testimony of many expert witnesses who testified that Cody's disabilities were caused by the accident. Appellees presented the testimony of an expert witness who testified that Cody's disabilities could not have resulted from the traffic accident. Appellees also presented the testimony of one of Cody's treating physicians, Dr. Max Wiznitzer. Dr. Wiznitzer testified that it was his opinion that Cody's symptoms were not caused by the automobile accident.
 {¶ 4} During the course of the trial, appellant reported to the court that she had seen Dr. Wiznitzer, while he was in the hall outside the courtroom waiting to testify, talking and laughing with several of the jurors. Appellant also reported that this conduct had occurred several times during the day when the court recessed, and that the jurors had spoken to Dr. Wiznitzer the next morning. The court called Dr. Wiznitzer into chambers, and he told the court that jurors had spoken to him, but he had responded with only one-word answers. Appellant was not permitted to question Dr. Wiznitzer.
 {¶ 5} The court then determined that it must question the jurors to determine whether the jury had been biased by this contact. In open court, the judge asked three questions of the entire jury with the attorneys of both parties present. These questions were:
 {¶ 6} "[1.] [D]id anyone approach you to engage in conversation?"
 {¶ 7} "[2.] Did any of you, or did they mention anything about this case?" and
 {¶ 8} "[3.] Do any of you feel that because of that incident that it would in any way, in any way affect your decision in this matter?"
 {¶ 9} In response to the first question, one juror replied that Dr. Wiznitzer had approached the jurors and asked about parking. The jurors did not respond to the other two questions.
 {¶ 10} The judge then indicated to the jury that he would allow the attorneys to ask questions, but, after a sidebar discussion off the record, proceeded to examine each juror individually in chambers, with no attorneys present. The judge questioned each juror and alternate briefly and, after questioning them, concluded that the jury was not biased by the contact. The trial proceeded to a jury verdict for appellee.
 {¶ 11} After the jury entered its verdict, appellant filed a motion for a new trial. The trial court conducted a hearing and denied appellant's motion.
 {¶ 12} On appeal, appellant raises the following assignments of error:
 {¶ 13} "[1.] The Trial Court erred to the prejudice of the plaintiffs in refusing to allow plaintiffs their right to be present and question the jury and an expert witness regarding possible improper contact between the members of the jury and the expert witness."
 {¶ 14} "[2.] The trial Court erred to the prejudice of Plaintiffs in allowing Max Wiznitzer, a treating physician, to testify as an expert witness outside the scope of his treatment of Plaintiff."
 {¶ 15} "[3.] The Trial Court erred to the prejudice of Plaintiff in not allowing Plaintiffs to impeach defense witnesses with authoritative medical texts."
 {¶ 16} "[4.] The trial court abused its discretion in not granting Plaintiff a new trial."
 {¶ 17} In her first assignment of error, appellant argues that the trial court erred by failing to conduct a hearing, at which both parties were present and able to question the jurors, when appellant brought conversations between appellee's witness and the jurors to the attention of the court. The court did conduct an examination of the jurors in chambers, but appellant contends that the examination did not comport with the legally required procedure for dealing with allegations of improper contact with the jurors.
 {¶ 18} Recently, this court has confronted the issue of allegations of improper communication with jurors. In State v. Henderson
(Sept 29, 2000), 11th Dist. No. 99-T-0001, 2000 WL 1459858, this court stated:
 {¶ 19} "In State v. Phillips (1995), 74 Ohio St.3d 72, the Supreme Court of Ohio set forth the procedure and applicable law a court must follow when an allegation is made that an improper communication has occurred with one or more members of the jury. `When a trial court learns of an improper outside communication with a juror, it must hold a hearing to determine whether the communication biased the juror.' (Emphasis added.) Id. at 88, citing Smith v. Phillips (1982), 455 U.S. 209, 215-216 (`This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias.') and Remmer v. United States (1954), 347 U.S. 227, 229-230 (`The trial court should not decide and take final action ex parte * * * but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.'). See, also, State v. Johnson (2000), 88 Ohio St.3d 95, 107."
 {¶ 20} The scope of a voir dire used to investigate allegations of improper communication with members of the jury is within the trial court's sound discretion. State v. Sanders, 92 Ohio St.3d 245, 252,2001-Ohio-189. Furthermore, courts have broad discretion in determining whether to grant a mistrial or replace a juror when instances of improper communication with jurors are alleged. Johnson, supra at 107.
 {¶ 21} In this case, once appellant had brought the communications between Dr. Wiznitzer and the jurors to the attention of the court, the court began the process of determining whether the jurors were biased by this communication. First the court asked Dr. Wiznitzer about any communications he had with the jurors. Next, the court questioned the jurors as a group as to whether there were any conversations between Dr. Wiznitzer and the jurors, and whether any conversations influenced the jurors. This questioning occurred in the courtroom with attorneys for both appellant and appellee present. Then the court interviewed each juror in chambers, without either counsel present. In this interview, the judge asked each juror whether any improper contact had occurred, and whether the juror would be influenced by any such contact. After these interviews, the trial court concluded that the jury was not biased by any contacts that occurred, and proceeded with the trial.
 {¶ 22} The Supreme Court of Ohio, in a case where the trial court asked two jurors a single question each and asked the entire jury whether it would be influenced, held that the trial court's failure to individually interrogate each juror separately was within the court's discretion and was not error. Sanders, supra at 251-252.
 {¶ 23} In this case, the judge questioned all the jurors in the courtroom, before counsel for both parties. At this time, the parties were able to witness the jury's response to the judge's questions. This questioning alone would have been sufficient to satisfy the requirements of both Sanders and Henderson. Because the court engaged in questioning of the jurors with counsel for both parties present, appellant was given the very limited amount of participation found to satisfy the requirements in Sanders, supra. The trial court's questioning of individual jurors exceeded this minimal standard. The court did not abuse its discretion with the procedure it used to determine whether the jurors were biased. Appellant's first assignment of error is without merit.
 {¶ 24} In her second assignment of error, appellant argues that, as a physician who had treated Cody, Dr. Wiznitzer should not have been permitted to testify as an expert witness for appellee, outside the scope of his treatment of Cody. In making this argument, appellant relies on R.C. 2317.02(B)(3)(a) and Civ.R. 26(E)(1)(b). Appellant contends that, under R.C. 2317.02, when appellant waived the physician-patient privilege, Dr. Wiznitzer was only permitted to testify as to communications from or advice given to appellant as it relates causally or historically to the injuries that were the subject of the litigation. To testify to more than this, appellant argues, Dr. Wiznitzer would have to be qualified as an expert witness. Dr. Wiznitzer, however, was not disclosed to appellant as an expert witness during discovery and so, appellant argues, his testimony should have been excluded for failure to comply with the continuing discovery requirements of Civ.R. 26(E).
 {¶ 25} Physician-patient privilege is governed by R.C. 2317.02, which provides that the physician-patient privilege is waived if the patient files a civil action. R.C. 2317.02(B)(1)(c). Once this privilege is waived, the physician may only testify to "a communication made to the physician * * * by the patient in question in that relation, or the physician's * * * advice to the patient in question, that related causally or historically to physical or mental injuries that are relevant to issues in the * * * civil action." R.C. 2317.02(B)(3)(a). However, if the physician is qualified as an expert witness, he or she may offer an expert opinion. Walker v. Holland (1997), 117 Ohio App.3d 775, 783. It is clear that Dr. Wiznitzer offered his opinion in response to questions by appellee's attorney, so the court was required to have admitted his testimony as expert testimony.
 {¶ 26} Under Evid.R. 702(B), an expert witness must be "qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." The trial court's determination that a witness is qualified as an expert is within the court's discretion, and will not be overturned absent an abuse of discretion. State v. Baston, 85 Ohio St.3d 418, 423, 1999-Ohio-280.
 {¶ 27} Additionally, Civ.R. 26(E)(1) provides that "[a] party is under a duty seasonably to supplement his response with respect to anyquestion directly addressed to * * * the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify." (Emphasis added).
 {¶ 28} In this case, the trial court determined that Dr. Wiznitzer was an expert witness. It was not an abuse of discretion for the trial court to determine, based upon Dr.Wiznitzer's specialized knowledge, skill, experience, training and education, that he was qualified to testify as an expert witness. Appellee was required to disclose Dr. Wiznitzer as an expert witness in response to any interrogatory "directly addressed to" the identity of expert witnesses expected to be called.
 {¶ 29} A review of the record has failed to uncover any interrogatory requesting the names of appellee's anticipated expert witnesses. In the absence of an interrogatory requesting appellee to identify his expert witnesses, or a court order instructing him to do so, appellee is under no affirmative duty to identify his expert witnesses. Civ.R. 26(B)(4)(b). With no duty to disclose his witnesses, appellee is, likewise, under no duty to supplement his response. Civ.R. 26(E)(1). The trial court did not err by allowing Dr. Wiznitzer to testify as an expert witness. Appellant's second assignment of error is without merit.
 {¶ 30} In appellant's third assignment of error, she argues that the trial court erred by prohibiting her from using learned treatises to impeach appellee's expert witnesses. Appellant argues that, though appellee's expert stated he did not rely on the textbooks shown him by appellant or recognize them as authoritative, one of appellant's expert witnesses had established the texts as authoritative. Because the texts were established as authoritative, appellant argues, she should have been allowed to use them to impeach appellee's expert, pursuant to Evid.R. 706, and the court erred in refusing to allow her to do so.
 {¶ 31} Evid.R. 706 codifies the common law rule allowing learned treatises to be used for the limited purpose of impeachment. Evid.R. 706 provides:
 {¶ 32} "Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following:
 {¶ 33} Relied upon by an expert witness in reaching an opinion;
 {¶ 34} Established as reliable authority (1) by the testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice.
 {¶ 35} If admitted for impeachment, the statements may be read into evidence but shall not be received as exhibits."
 {¶ 36} The Staff Notes to Evid.R. 706 are clear in indicating that, when an opposing expert witness refuses to accept a treatise as authoritative and reliable, counsel may lay the foundation that the treatise is authoritative and reliable using its own expert.
 {¶ 37} Appellant, during the presentation of her case-in-chief, presented the testimony of an expert witness, Dr. Robert D. Voogt, a rehabilitation counselor. Dr. Voogt testified that, during his twenty-two year career as a rehabilitation counselor, he worked with three to four thousand children and infants with traumatic brain injuries. He testified that, as a part of his practice, he is required to look at his patients' medical records and to determine whether brain injuries are the result of trauma or are congenital. Dr. Voogt also testified that he served with the World Health Organization on the editorial review board for publications in neurological injuries, and that he served as a delegate for the United States to international conferences on issues related to brain injury and brain damage. He testified that he owned and operated a forty-four-bed treatment facility for individuals with brain injuries.
 {¶ 38} Dr. Voogt testified that, in his practice, he uses and relies on various medical books. He identified two textbooks as reliable and authoritative texts in the fields of neurology and pediatric neurology. Appellee's expert witness, Dr. Ira Bergman, testified that he did not rely upon the two texts offered by appellant. In addition, Dr. Bergman testified that he did not believe these textbooks, or any others, to be authoritative and reliable. Appellant was not permitted to use any statements contained in the two texts, identified by Dr. Voogt, to be used to impeach Dr. Bergman's testimony.
 {¶ 39} The trial court based its ruling that appellant was not permitted to impeach Dr. Bergman with statements contained in these medical books on the syllabus of Stinson v. England, 69 Ohio St.3d 451,1994-Ohio-35. In Stinson, the Supreme Court of Ohio held that "the substance of the treatise may be employed only to impeach the credibility of an expert witness who has relied upon the treatise or has acknowledged its authoritative nature." Id. at paragraph two of the syllabus. (Internal citations omitted).
 {¶ 40} Stinson, however, was decided before the July 1, 1998 effective date of Evid.R. 706, and represents the state of the law prior to the enactment of the rule.[1] Because the new rule explicitly permits the testimony of other experts to establish the authoritative nature of a treatise, the rule in Stinson, restricting the use of learned treatises to only those treatises the testifying expert relied on or recognized as authoritative, is no longer applicable. The trial court should have relied on the language of Evid.R. 706, rather than onStinson.
 {¶ 41} The court, over objection, permitted Dr. Voogt to testify as an expert, and permitted him to testify that Cody's problems were not consistent with a congenital brain defect, and were consistent with traumatic brain injury. The court also permitted Dr. Voogt to testify that he uses certain medical books in his practice, and that the books are reliable and authoritative. After permitting Dr. Voogt to testify as an expert about Cody's brain injuries and permitting him to testify that the textbooks are reliable and authoritative, the court should have permitted appellant to impeach Dr. Bergman with statements from the texts.
 {¶ 42} "One of the oldest and most fundamental rights in the Anglo-American system of evidence is the right of a party to cross-examine an adverse witness. The value of the right of cross-examination is well-settled in Ohio jurisprudence. `* * * The importance of the right of full cross-examination, of an adverse witness, can scarcely be overestimated. As a test of the accuracy, truthfulness, and credibility of testimony, it is invaluable.' (Emphasis added.) Martin v. Elden (1877), 32 Ohio St. 282, 287." Smith v. Mitchell (1988), 35 Ohio st.3d 237, 239.
 {¶ 43} In this case, the court's denial of appellant's ability to impeach Dr. Bergman's testimony on cross examination with statements from the medical texts, in derogation of Evid.R. 706, was prejudicial error that prevented the jury from adequately assessing the accuracy, truthfulness, and credibility of the witness. Appellant's third assignment of error has merit.
 {¶ 44} In appellant's fourth assignment of error, she argues that the trial court abused its discretion by failing to grant a new trial. Appellant argues that the trial court should have granted a new trial because the jury's verdict was against the manifest weight of the evidence and because the trial was beset with aberrations and errors.
 {¶ 45} Having found appellant's third assignment of error to have merit, appellant's fourth assignment of error is moot and the judgment of the Trumbull County Court of Common Pleas is hereby reversed and remanded for a new trial.
JUDITH A. CHRISTLEY, J., concurs, DIANE V. GRENDELL, J., concurs, in judgment only.
[1] Freshwater v. Sheidt, 86 Ohio St.3d 260, 1999-Ohio-161 is a case considering impeachment by learned treatises which was decided by the Supreme Court of Ohio after the effective date of Evid.R. 706. In Freshwater, however, the trial court's evidentiary ruling was made prior to the effective date of Evid.R. 706 and the court relied on the common law prior to the enactment of Evid.R. 706 in deciding the case.