OPINION
{¶ 1} Defendant, Warner Gooden, appeals from his conviction and sentence for aggravated robbery and carrying concealed weapons.
 {¶ 2} On the night of April 19, 2001, Brandon Hoskins went to the United Dairy Farmers (U.D.F.) Store on N. Dixie Drive in Dayton. When Hoskins parked in the store's lot, he noticed a white car with shiny rims, tinted windows, and old English style lettering on the back window. Sitting inside that white car was a black male wearing a black hooded sweatshirt.
 {¶ 3} While Hoskins was inside the U.D.F. store purchasing cigars, another black male approached the counter. He was short, had a light complexion and freckles, and wore glasses. Hoskins completed his purchase and left the store. As Hoskins walked to his car, he was approached by a black male wearing baggy jeans, a black hooded sweatshirt, a red bandana about his neck, and a blue skull cap on his head. The man asked for a cigar, which Hoskins gave him. The man then pulled a black handgun out of his pocket, pointed it at Hoskins and said, "give me everything you got."
 {¶ 4} Hoskins gave the robber a white lighter and his wallet, which contained two five dollar bills, a twenty-five dollar instant lottery ticket, and a Premier Fitness Club card in Hoskins name. The robber told Hoskins to get in his car and leave. As Hoskins got into his car, he saw the robber run behind the Sound Waves store next to U.D.F. Hoskins then observed the other black male he had seen inside the U.D.F. store come out, get into the white car, and drive off toward the Sound Waves next door. Hoskins followed in his vehicle and observed the robber get into that white car and drive off.
 {¶ 5} Hoskins called police and later met Dep. Sullins in the U.D.F. parking lot. Hoskins described the clothing worn by the robber and the white get away car. Dep. Sullins recalled having seen that same white car just minutes earlier, and he put out a police broadcast for that vehicle. A few minutes later another deputy sheriff informed Sullins that the white suspect vehicle had been found in the parking lot of The Living Room on North Dixie Drive.
 {¶ 6} Dep. Sullins had Hoskins follow him to the parking lot of The Living Room, where Hoskins identified the white car as the getaway vehicle used in the robbery. Hoskins also identified the sole occupant of that vehicle, Lee Hayes, as the man he saw inside the U.D.F. store and who drove the white getaway car. Subsequently, Defendant, Warner Gooden, was discovered in that same parking lot. He wore the clothing described by Hoskins. Hoskins identified Defendant as the robber, the man with the gun. When Defendant was arrested, police found a black, loaded .380 handgun in his pocket, along with Hoskins' personal property.
 {¶ 7} Defendant was indicted on one count of aggravated robbery, R.C. 2911.01(A)(1), and one count of carrying concealed weapons, R.C.2923.12(A). A firearm specification was attached to the aggravated robbery charge. R.C. 2941.145. Defendant was also indicted on two other counts of aggravated robbery involving different incidents and victims which are not at issue in this appeal because Defendant was acquitted of those charges.
 {¶ 8} Defendant filed a motion prior to trial asking the court to suppress any pretrial identification by Hoskins. The trial court overruled that motion following a hearing. A jury subsequently found Defendant guilty of aggravated robbery and the firearm specification and carrying concealed weapons in relation to the Hoskins robbery. The trial court sentenced Defendant to prison terms totaling six years.
 {¶ 9} Defendant has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 10} "The trial court erred to the prejudice of the appellant by overruling appellant's motion to suppress concerning the one-on-one, show-up identification by Brandon Hoskins when the identification was clearly unduly suggestive and unreliable under the totality of the circumstances."
 {¶ 11} Defendant argues that the trial court erred in failing to suppress Brandon Hoskins' pretrial identification of him because the one-on-one show-up procedure police used was suggestive and the resulting identification was unreliable.
 {¶ 12} The evidence introduced at the suppression hearing demonstrates that Dep. William Sullins investigated the robbery of Hoskins that occurred at the U.D.F. store on N. Dixie Drive. Hoskins described the robber as a black male wearing a black or dark gray hooded sweatshirt, a red scarf around his neck, and a blue bandana on his head. Hoskins indicated that the robber used a black gun, and that a second black male, shorter, light-skinned, with freckles and glasses was also involved in this robbery. Hoskins also described the getaway vehicle as a white car, shiny rims, with old English style lettering in the back window.
 {¶ 13} After Hoskins described the vehicle, Dep. Sullins recalled having seen that vehicle in the area just minutes before being dispatched on this robbery. Dep. Sullins broadcast a description of the vehicle and asked crews in the area to be on the lookout for the vehicle. A few minutes later, Dep. Jackson advised Dep. Sullins that the suspect vehicle had been located in the parking lot of a nearby nightclub, The Living Room. Dep. Sullins asked Hoskins to follow him to The Living Room because police had discovered a vehicle matching Hoskins' description.
 {¶ 14} After arriving at The Living Room, Dep. Sullins eventually told Hoskins that they had a black male with clothing matching Hoskins' description. Dep. Sullins took Hoskins over to a police cruiser where Defendant sat handcuffed in the back seat. Dep. Sullins asked Hoskins if that was the guy. Hoskins looked at Defendant and immediately said: "Yeah, that's him. That's the guy with the gun." Hoskins then asked Dep. Sullins if Defendant still had the red scarf about his neck. Dep. Sullins looked closely at Defendant and saw that he wore a red scarf. Defendant also wore the hooded sweatshirt and blue bandana that Hoskins described.
 {¶ 15} In order to justify suppressing a pretrial identification, Defendant must demonstrate that the identification procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification, and that the identification was unreliable under the totality of the circumstances. Neil v. Biggers (1972), 409 U.S. 188;State v. Sherls (Feb. 22, 2002), Montgomery App. No. 18599.
 {¶ 16} The one-on-one show-up procedure that police used in this case is to some extent inherently suggestive. State v. Martin (1998),127 Ohio App.3d 272, 277. This is particularly true where, as here, police indicate to the victim-witness that they have a suspect in custody whose clothing matches the victim's description.
 {¶ 17} Nevertheless, an identification that is the product of a suggestive procedure is admissible if, considering the totality of the circumstances, it is reliable. Manson v. Brathwaite (1977), 432 U.S. 98;State v. Jells (1990), 53 Ohio St.3d 22, 27; Martin, supra. In determining whether an identification is reliable, courts consider:
 {¶ 18} "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the witness' level of certainty when identifying the suspect at the time of the confrontation; and (5) the length of time elapsed between the crime and the identification." Biggers, supra.
 {¶ 19} The record demonstrates that Hoskins had an opportunity to view Defendant face-to-face during the robbery, that Hoskins paid close attention to Defendant's clothing and accurately described it, and that Defendant was still wearing that same clothing when apprehended. Only seventy minutes elapsed between the robbery and Hoskins' identification of Defendant, and Hoskins was certain of his identification of Defendant as the guy with the gun.
 {¶ 20} Hoskins first identified Lee Hayes as the man who robbed him when police presented Hayes to Hoskins. Later, Hoskins identified Defendant as the robber after police presented him to Hoskins. No misidentification occurred, however. Hoskins explained that Hayes was the other man involved in the robbery, the driver of the white getaway car, while Defendant was the man with the gun who actually robbed him.
 {¶ 21} Under the totality of the facts and circumstances, Hoskins' identification of Defendant was reliable and therefore admissible. The trial court did not abuse its discretion in refusing to suppress this identification.
 {¶ 22} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 23} "The trial court erred to the prejudice of the appellant when it failed to conduct an in-camera inspection of the jurors following potential juror contact with a victim witness."
 {¶ 24} On the third day of the trial, Defendant alleged that during the lunch break he observed two of the jurors talking with one of the State's witnesses, Michael Blumenstock, the victim of another robbery charged in count three of the indictment. Defendant requested that the trial court individually voir dire each of the implicated jurors. Defendant also moved for a mistrial. The prosecutor represented to the trial court that he had questioned Blumenstock about this matter and that Blumenstock had denied having any contact with any juror.
 {¶ 25} After clearing the courtroom of all spectators, the trial court brought in the jury with counsel for the parties and Defendant present. The trial court then asked the jurors as a group whether any of them had contact with any of the State's witnesses, including Blumenstock. All of the jurors, one by one, denied having contact with anyone. The trial court then overruled Defendant's motion for a mistrial, finding no merit to his claim of improper outside communication with the jury.
 {¶ 26} Defendant now complains about the way the trial court handled this juror contact issue, suggesting that while the trial court held a hearing, the trial court was obligated to individually question the jurors in camera in order for any inquiry to be effective.
 {¶ 27} In cases involving outside communication with a juror, trial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or replace an affected juror.State v. Phillips, 74 Ohio St.3d 72, 89, 1995-Ohio-171. In this case the trial court held the required hearing. Id. While an in camera individual voir dire of the implicated jurors might have provided a better forum for inquiring about any possible contact, because the jurors might have been more willing to speak without others hearing their answers, the trial court clearly did not abuse its discretion in handling the matter as it did.
 {¶ 28} When the trial court inquired of the jury about any improper outside communication with them, each and every juror, one by one, denied any such contact. Thus, there is no evidence supporting Defendant's allegation that improper contact with the jurors occurred. Furthermore, we note that Defendant was acquitted of the charge involving Blumenstock. No abuse of discretion on the part of the trial court is demonstrated.
 {¶ 29} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 30} "The appellant was denied effective assistance of counsel by defense counsel's failure to request that the trial court issue jury instructions on lesser-included offenses of theft and robbery."
 {¶ 31} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, the United States Supreme Court set forth the standard for judging claims of ineffective assistance of trial counsel:
 {¶ 32} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.
 {¶ 33} "The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
 {¶ 34} "With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Syllabus, 2. Accord State v. Bradley
(1989), 42 Ohio St.3d 136.
 {¶ 35} Defendant argues that defense counsel was ineffective for failing to request jury instructions on certain lesser included offenses, namely theft and robbery.
 {¶ 36} In State v. Deem (1988), 40 Ohio St.3d 205, the Ohio Supreme Court set out a three part test to be used in determining whether one offense constitutes a lesser included offense of another:
 {¶ 37} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."
 {¶ 38} Theft, as defined in R.C. 2913.02(A), is not a lesser included offense of aggravated robbery as defined in R.C. 2911.01(A)(1), because aggravated robbery can be committed without theft also being committed. State v. Carter, 89 Ohio St.3d 593, 600-601, 2000-Ohio-172. Thus, the second prong of the Deem test is not satisfied. Because theft is not a lesser included offense of aggravated robbery, defense counsel did not perform in a deficient manner by failing to request a jury instruction on theft.
 {¶ 39} Robbery, as defined in R.C. 2911.02(A)(1), is a lesser included offense of aggravated robbery as defined in R.C. 2911.01(A)(1).State v. Woods (May 17, 2002), Montgomery App. No. 19005,2002-Ohio-2355. However, a trier of fact will not be allowed to consider such an offense when the evidence adduced on behalf of the defense is such that, if accepted by the trier of facts, the evidence would constitute a complete defense to all substantive elements of the crime charged. State v. Nolan (1969), 19 Ohio St.2d 133.
 {¶ 40} Moreover, in determining if a charge on a lesser included offense should be given, the Ohio Supreme Court has stated that if the trier of fact could reasonably find against the State and for the accused upon one or more elements of the crime charged and for the State on the remaining elements, which by themselves would sustain a conviction on a lesser included offense, then a charge on the lesser included offense is required. Conversely, if the jury could not reasonably find against the State on any element of the crime, then a charge on a lesser included offense is not only not required, it is improper. State v. Kilby (1977),50 Ohio St.2d 21, 24-25; Woods, supra.
 {¶ 41} In this case the evidence presented at trial would not reasonably support an acquittal on aggravated robbery but a conviction for robbery. Mistaken identity was Defendant's defense at trial. Defendant denied participating in the robbery of Brandon Hoskins, and claimed he was with a female friend at Lee Hayes' apartment at the time. This evidence, if accepted by the trier of facts as true, would require an acquittal of any offense relating to the Hoskins incident.
 {¶ 42} Moreover, the evidence presented at trial clearly showed that whoever robbed Hoskins did so by "displaying or brandishing" a deadly weapon: to wit, pointing a loaded, operable gun at Hoskins. Such conduct is the only difference between aggravated robbery per R.C.2911.01(A)(1) and robbery per R.C. 2911.02(A)(1). Thus, the evidence presented at trial is such that the jury could not reasonably find against the State on any element of aggravated robbery.
 {¶ 43} Because the evidence presented at trial did not warrant a jury instruction on the lesser included offense of robbery, defense counsel did not perform in a deficient manner by failing to request that instruction.
 {¶ 44} The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 45} "Appellant's conviction was against the manifest weight of the evidence."
 {¶ 46} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. Hufnagle,supra. The proper test to apply to that inquiry is the one set forth inState v. Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 47} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 48} Defendant argues that his conviction for aggravated robbery is against the manifest weight of the evidence. In support of this claim Defendant asserts that the testimony of the victim, Brandon Hoskins, is not worthy of belief because he identified two different people, first Lee Hayes then later Defendant, as the man who robbed him.
 {¶ 49} The credibility of the witnesses and the weight to be given to their testimony are matters for trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we stated:
 {¶ 50} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 51} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 52} Defendant was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1):
 {¶ 53} "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 54} "Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 55} Hoskins' testimony, if believed, is clearly sufficient to establish every element of aggravated robbery. After purchasing cigars, Hoskins was approached outside the U.D.F. store by a black male wearing a black hooded sweatshirt, baggy jeans, a red bandana around his neck and a blue skull cap on his head. The man pulled a black handgun out of his pocket, pointed it at Hoskins and said: "give me everything you got."
 {¶ 56} Hoskins gave the robber a white lighter and his wallet which contained two five dollar bills, a Premier Fitness Club card in Hoskins' name, and a twenty-five dollar instant lottery ticket. The robber fled in a white car with shiny rims, tinted windows, and old English style lettering in the back window, with another black male Hoskins had seen while inside the U.D.F. store. This second man was short, light-skinned, had freckles and wore glasses.
 {¶ 57} Seventy minutes later police located the white suspect vehicle described by Hoskins in the parking lot of a nightclub just a few miles away. After arriving at the scene, Hoskins identified the car and the occupant of that car, Lee Hayes, as the second suspect, the man he had seen inside the U.D.F. store, the one who drove the white getaway car. Later, Defendant was located in that same parking lot and Hoskins identified him as the robber, the man with the gun. At the time Defendant was apprehended, he was wearing the same clothing described by Hoskins, and had a black handgun in his pocket as well as Hoskins' personal property.
 {¶ 58} At trial Defendant claimed that Hoskins was mistaken about the identity of the robber and that he was with a friend at Lee Hayes' apartment when Hoskins was robbed. Defendant tried to explain his possession of the gun and Hoskins' personal property by claiming that he found those items in Lee Hayes' car and for some unknown reason put them in his pocket. The jury was entitled, of course, to disbelieve Defendant's explanation and they obviously did.
 {¶ 59} In reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 60} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN and WOLFF, JJ., concur.