OPINION
{¶ 1} Defendant-appellant, Michael Ingram, was indicted by the Franklin County Grand Jury on one count of felonious assault, in violation of R.C. 2903.11. The charges resulted from the stabbing of Robert Reed on January 6, 2002. Following a jury trial, defendant was found guilty as charged, and the trial court sentenced him to serve a term of seven years. Defendant filed a timely notice of appeal and asserts the following two assignments of error:
I. The Trial Court Erred To The Prejudice Of The Defendant-Appellant By Permitting The Introduction Of Improper Character Evidence.
II. Appellant Was Denied His Right To Effective Assistance Of Counsel And A Fair Trial Under The Sixth And Fourteenth Amendments To The United States Constitution And Article I, Section 10 Of The Ohio Constitution.
 {¶ 2} Robert Reed testified that, early in the morning on January 6, 2002, he was awakened by a telephone call. The caller informed him that his cousin, Sean, was missing. Because Reed knew that Sean used crack cocaine, he suspected that he might be able to find Sean at "Red's" house. (Tr. 49; 68.) Reed asked his friend, Lynel Price, to drive him to Red's house. According to Reed, he had never met Red before but believed he knew where he lived.
 {¶ 3} Reed and Price arrived at the apartments located at 2888 Cleveland Avenue around 5 a.m. on January 6, 2002. Reed testified that he knocked on defendant's door several times. A voice inside answered and told Reed to go away. At that time, Reed knocked again and indicated that he was looking for his cousin. (Tr. 50-51.) According to Reed, someone inside yelled again, saying he would call the police, and Reed told him to go ahead. According to Reed, the next thing he knew, the door flew open and defendant rushed at him, swinging his arms. Defendant hit Reed on his forehead and his neck. Price yelled at Reed to back away because defendant had a knife. (Tr. 54-55.) Reed left the apartment, and he and Price got into the car and left. Shortly thereafter, Reed and Price flagged down a police officer, whom they brought back to defendant's apartment. (Tr. 56.) When they arrived, two other police officers were already at defendant's apartment. Reed told the officers that defendant had stabbed him, and defendant was handcuffed at that time. (Tr. 57-58.) According to Reed, neither he nor Price tried to enter the apartment, nor did they threaten defendant with any violence, nor were they carrying any weapons. (Tr. 59.)
 {¶ 4} Lynel Price testified as well and corroborated Reed's story. Price also testified that he did not know the defendant and just knew that Reed was under the assumption that someone at that apartment had been selling drugs to his cousin, Sean.
 {¶ 5} Police Officers Jody Fox and Deanna Brewer also testified. At approximately 5 a.m., on January 6, 2002, they were dispatched pursuant to a telephone call to 911 indicating that people were outside banging on defendant's door. (Tr. 23-25.) When they arrived, neither Reed nor Price were there. Officers Fox and Brewer knocked on defendant's door, and defendant informed them that a couple of people had been banging on his door, yelling, and that he had refused to open the door and they left. (Tr. 27-28.) A couple of minutes later, a car pulled up and defendant indicated that he thought they were the same people who had been there earlier because their car had a noisy muffler. (Tr. 29-30.) Reed exited the car and told the police officers that defendant had stabbed him. At that time, defendant was taken into custody. (Tr. 31-32.) Officer Brewer testified that Reed had two wounds, one to the right side of his forehead and the other to the right side of his neck, and that he was bleeding. When he arrived at the apartment, Reed ran toward the stairs, told the officers that he had come by to confront defendant about selling crack cocaine to his cousin, and that a confrontation ensued wherein defendant had stabbed him. (Tr. 38-42.) Officer Brewer indicated that there was no damage to the front door.
 {¶ 6} Defendant testified on his own behalf. Defendant stated that he was legally blind. (Tr. 94.) Early in the morning hours of January 6, 2002, defendant heard a car pull up outside the apartment with a noisy muffler. Defendant heard footsteps approach his apartment and then heard knocking. Defendant stated that someone outside asked him if Lisa was there. Defendant told them that she was not, but they would not leave. According to defendant, the people outside told him to open the door or they would kick it in, and defendant told them he was calling 911. Defendant did call 911.
 {¶ 7} Defendant testified further that, because the doorknob on the apartment door was loose, he had secured the door with a butter knife. After defendant heard footsteps leaving the landing, he quietly opened the door to see if anyone was still there. Defendant indicated that, although terrified, he opened the door hoping that the people outside would see him and know that they had the wrong apartment. (Tr. 104-105.) According to defendant, after he opened the door, Reed tried to force his way into the apartment. Reed's arm was swinging at defendant, and defendant thought he saw a wrench or something in Reed's hand. (Tr. 98.) Defendant testified that he did not stab Reed and that he never told the 911 operator that he had not opened the door. (Tr. 102-103.) However, defendant did admit to lying to police officers Fox and Brewer when he told them that he had refused to open the door to the apartment and that the two men had left. He also testified that he had not told the police that Reed had a weapon because he was terrified. (Tr. 105.) Defendant also admitted that he lied to the detectives when they interviewed him later. Defendant told the detectives that he did not open the door; that he did not stab anyone; that he did not tell them that Reed got into his apartment; that he did not mention that Reed had a wrench; and that he did not tell the detectives that Reed had swung at him. Although the interview was three hours later, defendant testified that he was still terrified and that was why he lied. (Tr. 109-111.) Defendant also testified that he had a 1990 conviction for drug trafficking.
 {¶ 8} In his first assignment of error, defendant asserts that the trial court erred by permitting the introduction of improper character evidence at trial. Specifically, defendant points to Officer Brewer's testimony that Reed told her "that he was there to confront Mr. Ingram because Mr. Ingram was selling crack to his cousin and that there was a confrontation and that Mr. Ingram stabbed him." (Tr. 42.) Defendant also points to the following testimony given by Reed:
[Prosecuting attorney:] Q. When you went to the scene did you indicate to the occupants of the residence why you were there?
[Reed:] A. Yeah.
Q. You told them about your cousin?
A. Yes.
Q. You told them specifically what?
A. I told him I was looking for my cousin, I heard that he was there.
Q. Did you tell him anything else?
A. No.
Q. Did you tell him anything about selling drugs in the future to your cousin?
A. I told him I would call the police on him.
(Tr. 60-61.) Defendant contends that the above statements constitute improper character evidence which should have been excluded pursuant to the Ohio Rules of Evidence.
 {¶ 9} Defendant's counsel failed to object to these two references concerning Reed's belief that someone at the apartment was a drug dealer. Although generally a court will not consider alleged errors that were not brought to the attention of the trial court, Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed, although they were not brought to the attention of the court." "`Plain error is an obvious error * * * that affects a substantial right.'" State v. Yarbrough, 95 Ohio St.3d 227,2002-Ohio-2126, quoting State v. Keith (1997), 79 Ohio St.3d 514, 518. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. Yarbrough at ¶ 108. "`Notice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice.'" State v. Bass, Franklin App. No. 02AP-547, 2003-Ohio-1642, quoting State v. Martin, Franklin App. No. 02AP-33, 2002 Ohio 4769, at ¶ 28.
 {¶ 10} Defendant argues that the statements relating to Reed's belief that defendant was dealing drugs to Reed's cousin was inadmissible under Evid.R. 404(B), which provides as follows:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. * * *
 {¶ 11} In reviewing defendant's assignment of error, this court notes several things. First, Reed testified that he was looking for a man he knew only as "Red" and that he had never met Red nor the defendant prior to the incident on January 6, 2002. Second, no evidence was presented to show that defendant was known by the nickname, "Red." As such, the testimony was only indirectly related to defendant at all. However, defendant himself did testify that he was convicted of drug trafficking in 1990. It is arguable that defendant's testimony regarding his conviction for drug trafficking together with the testimony that Reed was looking for a man named Red, whom he suspected to be selling drugs to his cousin, tended to depict defendant as a drug dealer who would be more likely to commit other crimes. However, when considering the entire record, the admission of these two comments does not rise to the level of plain error. This court cannot say that but for the admission of these two statements the outcome of this case would have been different.
 {¶ 12} The state presented evidence that Reed came to defendant's apartment looking for his cousin. Ultimately, defendant opened the door and Reed was stabbed with a knife. Reed's wounds were serious enough that he was in the hospital for three days. Reed testified that one of the wounds was too deep to be stitched. Defendant testified that he used a butter knife to help secure the door to his apartment. Defendant was holding the butter knife when Reed attempted to gain access to the apartment. According to defendant's testimony, Reed's arm was in the apartment while defendant continued to push on the door and ultimately succeeded in closing the door. Furthermore, defendant told the 911 operator, the police officers who responded to his 911 call, and the detectives who interviewed him three hours later that Reed did not gain access to his apartment because he never opened the door. While defendant explained to the jury that he lied to the police and the detectives because he was terrified, the jury, as trier of fact, was permitted to decide whose version of the facts they believed. Furthermore, throughout his testimony, defendant indicated that Reed was the aggressor and that, although defendant inadvertently stabbed Reed, defendant acted in self-defense at all times. Reed's testimony that he believed Red lived at this apartment and that Red had been selling drugs to his cousin would actually support defendant's version of the facts and would give Reed a motive for being the aggressor.
 {¶ 13} Based upon all of the facts, this court finds that the introduction of the statements did not rise to the level of plain error, and defendant's first assignment of error is not well-taken and is overruled.
 {¶ 14} In his second assignment of error, defendant asserts that he was denied effective assistance of counsel due to the failure of trial counsel to object to the admission of the two statements discussed in the first assignment of error.
 {¶ 15} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, the United States Supreme Court established the two-prong analysis for determining whether a counsel's assistance was so defective as to require a reversal of conviction:
* * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. Id. at 687.
 {¶ 16} The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. The proper standard of attorney performance is that of reasonably effective assistance. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. The defendant carries the burden of showing that counsel's deficient performance prejudiced his trial. Id. at 687-691. The burden is met where the reviewing court finds, given the totality of the evidence, that, but for counsel's errors, the jury's verdict would reasonably have been different. Id. at 691-696.
 {¶ 17} This court has held that "the failure [of counsel] to offer an objection, alone, is not enough to sustain a claim of ineffective assistance of counsel, as that failure may be justified as a tactical decision." State v. Flowers (May 4, 2000), Franklin App. No. 99AP-530, citing State v. Fears (1999), 86 Ohio St.3d 329, 347. Debatable tactical decisions generally do not constitute a deprivation of effective counsel. State v. Phillips (1995), 74 Ohio St.3d 72.
 {¶ 18} As stated previously, Reed's belief that defendant was "Red" and that he was selling drugs to Reed's cousin would tend to corroborate defendant's testimony that Reed was the aggressor in their confrontation. It is conceivable that trial counsel did not object to this testimony because it tended to corroborate defendant's story. Furthermore, defendant himself testified that he had been convicted of drug trafficking in 1990 and, as such, that evidence was already before the jury. Furthermore, after reviewing the evidence, this court cannot say that, but for the omission of those statements and the failure of trial counsel to object, the outcome of defendant's trial would have been different. As stated in response to defendant's first assignment of error, the jury had the opportunity to view the witnesses and determine which story they found to be more credible. Substantial testimony was presented against defendant, and this court finds that defendant has not shown that trial counsel's failure to object to these statements constitutes ineffective assistance of counsel. Defendant's second assignment of error is not well-taken and is overruled.
 {¶ 19} Based on the foregoing, both of defendant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BROWN and WATSON, JJ., concur.